698 P.2d 435

**Mrs. Wayne KEITHLEY, Personal Representative of the Estate of Wayne Keithley, Plaintiff-Appellant,**

v.

**ST. JOSEPH'S HOSPITAL, a non-profit corporation, H.J. Murrell, M.D.; Doyle Simmons, M.D.; and X-Ray Associates, a New Mexico corporation, Defendants-Appellees.**

No. 7629.

Court of Appeals of New Mexico.

Oct. 18, 1984.

Bruce Black, Campbell & Black, P.A., Santa Fe, for appellees X-Ray Associates.

W. Robert Lasater, Jr., Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for appellees Doyle Simmons, M.D. & H.J. Murrell, M.D.

Carl J. Butkus, Civerolo, Hansen & Wolf, P.A., Albuquerque, for appellee St. Joseph's Hosp.

Stephen Durkovich, Sigmund Bloom, Albuquerque, for appellant.

## OPINION

DONNELLY, Chief Judge.

Plaintiff, in her capacity as personal representative of her husband's estate, appeals from an order granting summary judgment and dismissing her complaint for medical malpractice against St. Joseph's Hospital, a non-profit corporation, Drs. H.J. Murrell and Doyle Simmons, and X-Ray Associates, a New Mexico corporation. The central issue on appeal is whether material factual issues existed concerning defendants' failure to disclose alleged acts of medical malpractice so as to toll the running of the statute of limitations.

## FACTS

Plaintiff, a 67-year-old widow, brought suit against defendants St. Joseph's Hospital, Drs. H.J. Murrell and Doyle Simmons (Radiologists), and X-Ray Associates, Inc., alleging actions on the part of each defendant which contributed to the death of her husband.

Plaintiff alleged that her husband received external beam radiation therapy at St. Joseph's Hospital from July 5, 1977 through August 19, 1977, and that the treatment was prescribed by Drs. Simmons and Murrell, who were also officers, directors and employees of the defendant X-Ray Associates. Plaintiff also claimed that X-Ray Associates had contracted with the hospital to provide x-ray therapy and quality control of the x-ray services but failed to properly perform these services. Plaintiff alleged that the radiotherapy provided by the hospital was an extra-hazardous, non-delegable activity on the hospital's part and that the mechanism by which the radiation was delivered was within the exclusive control of the hospital. We have not identified all of the plaintiff's claims; the ones set forth in this paragraph are sufficient for this appeal.

In her complaint, plaintiff alleged, *inter alia,* that in July 1977 her husband underwent radiation therapy treatment at St. Joseph's Hospital, that he received improper radiation treatments, and that the errors were unknown to him or to the plaintiff. She claims that defendants were negligent in the delivery and calculation of the external beam therapy and learned of their negligence within the applicable statute of limitations "but did not divulge [these facts] to the Plaintiff or to the decedent" during his lifetime. Plaintiff also alleged that Drs. Murrell and Simmons and X-Ray Associates were deficient in performing diagnostic radiology and treated decedent with improper radiation dosages which caused his death.

Plaintiff filed an affidavit opposing summary judgment and also filed affidavits of

several physicians, the depositions of defendants Murrell and Simmons, and the treatment chart of her deceased husband. In her affidavit she stated that her husband had been diagnosed as suffering from cancer of the bladder in 1974, and that he had undergone radiation therapy at St. Joseph's Hospital and was treated with a linear accelerator from July to August 1977. In total, he received 27 separate treatments. About two or three months after the radiation treatment, decedent began experiencing loss of bladder control. In November 1977 he experienced back pain in his pelvic area and the pain was so severe that painkillers would not alleviate his discomfort. When Dr. Simmons was consulted by decedent and plaintiff about the problem, Simmons said it was due to arthritis. Decedent checked into the hospital in March 1978, and it was determined that his bladder had shrunk. Thereafter, Dr. Knight operated on the decedent and reported that decedent's bladder was in poor condition and that the surgical incision would not heal. Shortly thereafter on April 20, 1978, decedent died. The cause of death was listed on the death certificate as "cancer".

Plaintiff's affidavit further stated that after her husband's death she began asking about the cause of her husband's death. Plaintiff wrote a letter dated October 2, 1978, to Sister Celestia, the Administrator of St. Joseph's Hospital, asking the Sister to find out the cause of her husband's problems. She also requested a final bill. In the letter plaintiff stated that after Dr. Knight operated on the decedent he found that the decedent's bladder had shrunk and "[e]vidently this was caused by too many treatments and the cause of his back pain [was] not arthritis * * *. I believe the radiology department and Dr. Simmons should be held accountable."

The plaintiff's letter was turned over to Ronald Nicholson, Director of Hospital Business Services who responded to it by notifying the plaintiff that there were no outstanding charges owing to the hospital for her husband's radiation treatments. He did not mention the plaintiff's asser-

tions that her husband had been improperly treated.

Plaintiff's affidavit further stated that on December 18, 1980, she wrote Al Topp, New Mexico Environmental Improvement Department, stating that she had read an article in the Albuquerque Journal indicating that the state was investigating to determine if a number of cancer patients had been given overdoses of radiation during treatment at St. Joseph's Hospital. In this letter plaintiff stated ".I have felt, along with my family, that too much radiation caused his death and had he never had the treatments, he could have enjoyed a few more years." Plaintiff also said in this letter, "I felt like taking some action but have been told the doctors stick together and it would be their word against mine." Plaintiff properly presented her claims before the Medical Review Commission. NMSA 1978, § 41–5–14 (Repl.Pamp.1982).

Thereafter, plaintiff filed suit against defendants on March 3, 1983. Plaintiff alleged that defendants were guilty of fraudulent concealment of the alleged acts of malpractice and should be estopped from raising the defense of the statute of limitations.

Defendants filed motions to dismiss the amended complaint for failure to file within the period permitted by the applicable statute of limitations. Following a hearing, the trial court entered an order dated December 21, 1983, granting the motions for summary judgment as to each of the defendants and as to all of the claims.

## DISCUSSION

### (a) Factual Issue as to Alleged Concealment

The trial court in granting the motion for summary judgment held that the plaintiff failed to file her claims within the limitations period for malpractice claims.

■ The statute of limitations applicable to this case is NMSA 1978, Section 41–5–13 (Repl.Pamp.1982), which requires that a claim must be "filed within three years after the date that the act of malpractice

occurred * * *." Under the Medical Malpractice Act, Section 41–5–13, the statute of limitations began to run from the date of the alleged act of malpractice. *Armijo v. Tandysh,* 98 N.M. 181, 646 P.2d 1245 (Ct. App.1981), *cert. quashed,* 98 N.M. 336, 648 P.2d 794 (1982), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 377, 74 L.Ed.2d 510 (1982); *see Roybal v. White,* 72 N.M. 285, 383 P.2d 250 (1963).

Decedent received radiation therapy from July 5 through August 19, 1977 and the alleged acts of malpractice occurred on or about August 19, 1977. Decedent died on April 20, 1978. Plaintiff's initial complaint was filed on March 3, 1983. The trial court's order granting summary judgment was proper unless the statute of limitations, which began to run August 19, 1977, was tolled.

Plaintiff claims that the defendants fraudulently concealed information about the decedent's injury and subsequent death which tolled the statute of limitations. She claims that there existed a confidential physician-patient relationship between Dr. Simmons, Dr. Murrell and the decedent. She alleges that the doctors concealed or failed in their duty to disclose the fact that improper dosages of radiation were administered to her husband during cancer treatment at the hospital.

■ We agree with plaintiff's contention that the statute of limitations may be tolled where a physician has knowledge of facts relating to medical malpractice and fails to disclose such facts to the patient under circumstances where the patient may not be reasonably expected to learn of the improper acts. *See Garcia v. Presbyterian Hospital Center,* 92 N.M. 652, 593 P.2d 487 (Ct.App.1979); *Hardin v. Farris,* 87 N.M. 143, 530 P.2d 407 (Ct.App.1974). New Mexico follows the rule that where a fiduciary duty or confidential relationship exists, as between a physician and a patient, a duty arises to disclose all material information concerning the patient's treatment. *Garcia v. Presbyterian Hospital Center; Hardin v. Farris.* A failure to do so may constitute fraudulent concealment.

The fraud may be active, because of some affirmative act to conceal information that may give the patient a cause of action, or passive, because of the doctor's failure to disclose material information to the patient. *Hardin v. Farris; see Leagan v. Levine,* 158 Ga.App. 293, 279 S.E.2d 741 (1981). Fraudulent concealment, whether active or passive, can toll the running of the statute of limitations. *Garcia v. Presbyterian Hospital Center; Hardin v. Farris.*

The court in *Garcia* directly addressed the issue of fraudulent concealment and the tolling of the statute of limitations. The plaintiff in *Garcia* underwent cancer surgery twice. In 1972, his doctors advised him to undergo a third operation. Plaintiff alleged that he repeatedly asked the doctor and the hospital nursing staff why it was necessary to have a third operation. Neither the doctor nor the nurses would answer his questions. The trial court granted summary judgment based on the running of the statute of limitations. It ruled that the plaintiff knew or should have known about defendants' negligence. The court of appeals reversed the summary judgment order holding that the hospital had a fiduciary duty to disclose medical information to the patient and the defendant's failure to disclose information about the patient's condition constituted fraudulent concealment. In *Garcia,* the court of appeals held that the statute of limitations was tolled while the fraud was perpetuated and, therefore, the complaint had been timely filed.

■ Similarly, the statute of limitations may be tolled against a hospital, based upon a hospital's failure to disclose information about alleged acts of negligence stemming from radiation therapy performed at the hospital. *Yamaguchi v. Queen's Medical Center,* 65 Hawaii 84, 648 P.2d 689 (1982). On appeal in *Yamaguchi,* the court held that a genuine issue of fact existed concerning the hospital's alleged concealment of claimed acts of negligence, thereby precluding summary judgment. *See also Brodie v. Mastro,* 638 P.2d 800

(Colo.App.1981); *affirmed* 682 P.2d 1162 (Colo.1984).

Defendants have denied any fraudulent concealment and assert that plaintiff had sufficient knowledge in 1978 when she wrote to Sister Celestia, and in 1980 when she wrote to Al Topp of the Environmental Improvement Department, to perfect her suit predicated upon alleged improper medical treatment within the limitations period, but that she delayed in filing her suit until 1983. In fact, defendants strenuously argue that nothing prevented the plaintiff from assembling the information she was able to gather to oppose their summary judgment motion before the three-year statute of limitations period had run. Under such circumstances, defendants assert plaintiff should be barred under the statute of limitations from prosecuting her suit.

■ A plaintiff who alleges that the statute has been tolled by fraud, either active or passive, must establish that she did not have the means to discover the fraud. In *Carrow v. Streeter*, 410 N.E.2d 1369, 1375 (Ind.App.1980), the court held:

"If the fraud, although not discovered, ought to have been discovered, and could have been if reasonable diligence had been exercised by the plaintiff, the statute will run from the time discovery ought to have been made. To prevent the barring of an action, *it must appear that the fraud not only was not discovered, but could not have been discovered with reasonable diligence*, until within the statutory period before the action was begun." * * *

\* \* \* \* \* \*

* * * [T]he reason that the statute is no longer tolled after the plaintiff has discovered or should have discovered the existence of the cause of action is lack of continued reliance on the representations of the defendant.

(Emphasis in original.) (Citations omitted.)

Plaintiff stated in her affidavit in opposition to summary judgment that Dr. Simmons told her that the cause of her husband's intense pain after radiation therapy was due to arthritis. Following a subsequent operation on the decedent, Dr. Knight reported that the incisions in the bladder would not heal. Plaintiff claims that she never knew that the complications her husband suffered from prior to his death were not a normal consequence of the progression of the cancer because defendants had not advised her or the decedent of the material facts surrounding decedent's radiation therapy. She claims that it was only after filing suit that she discovered that the failure of a wound to heal is a side effect of receiving excessive radiation.

■ Fraud may stem not only from a misrepresentation, but from concealment or a failure to disclose the information as well. Where a confidential or fiduciary relationship exists between parties, there must be a disclosure of material facts. Suppression of material facts under circumstances where a party in good faith is required to disclose the information, may amount to a false representation. An issue of material fact may exist as to whether a party should therefore be estopped from raising the defense of the statute of limitations. *See Krueger v. St. Joseph's Hospital*, 305 N.W.2d 18 (N.D.1981); *Leagan v. Levine.*

■ In the instant case, plaintiff wrote to the director of the hospital in October 1978 indicating that she felt her husband had received "too many" radiation treatments. Defendant hospital did not respond to plaintiff's statements that her husband may have been improperly treated. The hospital's failure to deny or respond to the plaintiff about her concern for the cause of her husband's death would permit a factfinder to reasonably infer that the hospital was aware of the alleged improper treatment of the decedent. *See Jones v. Central Arkansas Radiation Therapy Institute, Inc.*, 270 Ark. 988, 607 S.W.2d 334 (1980). Additionally, the hospital notified the plaintiff that there were no additional charges owing to the hospital although plaintiff believed that the entire bill had not been paid. An inference may be drawn that the hospital, by forgiving an unpaid

bill, hoped to avoid an action by the plaintiff.

■ Defendants contend that these allegations alone are not sufficient evidence of fraud or concealment to toll the statute of limitations. Plaintiff, however, responds that mere silence may give rise to a finding of fraudulent concealment. *See Hardin v. Farris.* Fraud, actual or constructive, may be established by circumstantial evidence. *Snell v. Cornehl,* 81 N.M. 248, 466 P.2d 94 (1970); *Curtis v. Curtis,* 56 N.M. 695, 248 P.2d 683 (1952).

In opposition to the motion for summary judgment, plaintiff filed the affidavits of Ruth Grobstein, M.D. and Dennis Leavitt, Ph.D. (a physicist). Both Grobstein and Leavitt stated that the errors in the administration of radiation therapy to decedent were so apparent in decedent's treatment sheet as to "jump out at" or become "immediately obvious" to anyone with experience with a Cobalt 60 machine, or anyone able to make simple field calculations.

As shown by their depositions, both Drs. Murrell and Simmons were experienced radiologists, were trained on the Cobalt 60 radiotherapy machine, and each was able to make simple field calculations pertaining to radiological treatment. Dr. Simmons admitted it was his custom and practice to review the radiotherapy record and the treatment sheet on each patient. Dr. Murrell testified he regularly looked at a patient's treatment sheet if the patient began experiencing complications. Additionally, Marvin Sachs, the dosimetrist, testified in his deposition that he was familiar with the Cobalt 60 machine and the manner in which dosage calculations were made. Sachs reviewed the decedent's treatment sheet and initialed it. The facts and inferences which can be drawn from this circumstantial evidence are sufficient to create a genuine issue of fact as to whether defendants were aware of alleged errors in radiation therapy provided to decedent and failed to disclose such information resulting in the tolling of the statute of limitations.

We need not discuss whether a genuine issue of fact exists about whether the defendants should have known about the alleged errors in the radiation therapy and failed to disclose this information. Neither the statute of limitations for medical malpractice claims (Section 41–5–13) nor the opinion in *Hardin v. Farris,* contain language indicating that either the legislature or the court intended that the statute of limitations would not run in a case where a doctor, hospital, or other health professional should have known that his conduct was improper or that his sub-standard treatment caused injury to the patient.

**(b) Claim of No Disclosure Duty Once a Patient Dies**

■ Defendants contend that after the death of the decedent in 1978, the doctor-patient relationship or the hospital-patient relationship terminated and that thereafter no duty existed on their part to disclose the allegedly damaging information to plaintiff or decedent's survivors. Defendants Murrell and Simmons argue that the physician-patient relationship ends when the patient dies, citing *Adams v. Luros,* 406 N.E.2d 1199 (Ind.App.1980). Three years from the date of the decedent's death expired prior to the plaintiff's filing of suit in 1983.

Defendant hospital argues that concealment by silence must occur during the hospital-patient relationship unless "active fraud" exists. *Carrow v. Streeter.* The court in *Carrow* held that upon termination of the relationship, no impediments exist to preclude the patient's ability to discover possible causes of action. Here the alleged act of malpractice occurred in August 1977 and the hospital-patient relationship terminated on August 19, 1977. The hospital claims that the statute of limitations commenced on this date.

We decline to adopt the termination of duty rule announced by the Indiana court in *Adams v. Luros* and *Carrow v. Streeter.* The holdings therein would set up an incongruous situation which would limit the duty of disclosing material information to patients who do not die. The doctor's or hospital's duty to disclose pertinent medical

information would end at the time of the patient's death. Under such a rule, patients who are merely injured would be in a better position to assert rights against a health-care provider than survivors of the more egregiously injured patients who die from their injuries.

New Mexico has never determined whether a doctor or a hospital has a duty to disclose material information in a case where the patient has died. *Hardin v. Farris* involved a defendant who prevented the person entitled to bring the lawsuit from obtaining information needed to bring the lawsuit. *Garcia v. Presbyterian Hospital Center* referred to a hospital's duty to divulge all material facts to its patients.

In the present case, the hospital's records show that the decedent's "nearest relative" was his wife. Dr. Simmons made his "arthritis" remark to both the decedent and the wife. It was the wife who wrote to the hospital in 1978 inquiring about the cause of her husband's problems, and it was the wife who wrote to the Environmental Improvement Department in 1980. Under these facts, defendants had a continuing duty to disclose pertinent facts to the decedent's wife concerning any errors which may have been known to them arising from their treatment of the decedent.

The duty to the wife is proper because the issue of whether any tolling ceased, and if so when, will depend on what the wife knew or should have known about the facts underlying the cause of action brought on behalf of her husband. In so holding we recognize that the wife sues as personal representative and not as the surviving widow. However, the duty to disclose was, under the facts, owed to the wife as the nearest relative, and not to her as personal representative of her husband.

**(c) Factual Issue as to What Wife Knew or Should Have Known**

■ Additionally, we determine that a material question of fact existed as to whether plaintiff knew or should have known of facts involving alleged acts of malpractice by defendants in the course of the treatment provided decedent at a time three years or more prior to the expiration of the applicable statute of limitations, thus abating any tolling of the statute of limitations. *See Brewington v. Raksakulthi,* 584 S.W.2d 112 (Mo.App.1979).

The judgment is reversed and remanded for proceedings consistent with this opinion. Plaintiff is awarded her costs on appeal.

IT IS SO ORDERED.

WOOD and BIVINS, JJ., concur.