2005-NMSC-029

120 P.3d 430

**Stella BLEA, Plaintiff–Appellant,**

v.

**Roderick FIELDS, M.D.,
Defendant–Appellee.**

**No. 28,740.**

Supreme Court of New Mexico.

Aug. 15, 2005.

Roger Eaton, Eaton, Martinez & Hart, P.C., Michael J. Doyle, Albuquerque, for Appellant.

Reeves, Chavez, Albers, Anderson & Montes, P.A., William R. Anderson, Las Cruces, for Appellee.

## OPINION

CHAVEZ, Justice.

{1} In this medical negligence case we are asked to clarify the state of the law in New Mexico regarding a party's entitlement to a jury trial in a case that involves both legal and equitable claims. The following question was certified to us by the Court of Appeals pursuant to Rule 12–606 NMRA 2005 and NMSA 1978, Section 34–5–14(C) (1972): "Whether a party is entitled to a jury trial where proper and timely demand has been made in a matter that involves mixed claims of law and equity, and where a decision on the equitable claims will dispose of the legal claim?" This question was certified because of the apparent discord between New Mexico cases concerning whether, in cases involving mixed claims of equity and law, the equitable or legal claim must be heard first. In *Evans Fin. Corp. v. Strasser,*

99 N.M. 788, 790, 664 P.2d 986, 988 (1983), this Court followed the approach of the United States Supreme Court in *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 503–04, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), which held that in a case involving equitable and legal claims, the constitutional right to a jury trial on the legal claims limits a trial judge's traditional discretion to decide the equitable claims first, and absent "imperative circumstances," common fact issues must be submitted first to a jury. *Id.* at 510–11, 79 S.Ct. 948. On the other hand, in *State ex rel. McAdams v. District Court*, 105 N.M. 95, 97, 728 P.2d 1364, 1366 (1986) we stated the equitable claims were to be tried first. We hold that when a case involves both equitable and legal claims, a trial judge may decide the equitable claims first if the equitable claims do not have any disputed fact issues in common with the legal claims. This is true even if deciding the equitable claims results in dismissal of the legal claims. However, when equitable and legal claims present common issues of fact which are material to the disposition of both claims, the legal claims must be submitted to a jury before the equitable claims are decided. Otherwise, the judge while deciding the equitable claims will have invaded the province of the jury by deciding disputed facts that are material to the legal claim. In so holding, we affirm.

## DISCUSSION

{2}  Plaintiff Stella Blea brought a medical negligence action in June 1997 against Defendant Dr. Roderick Fields, a Rheumatologist. Plaintiff alleges she had an allergic reaction to the pain reliever Naprosyn, which Defendant prescribed to her in February 1995, although Defendant had been informed that Plaintiff had experienced asthma-related reactions to aspirin and knew that Naprosyn is contraindicated in such individuals. Plaintiff alleged that Defendant's negligence resulted in her hospitalization in March 1995. Defendant moved to dismiss the complaint, or alternatively for summary judgment, arguing that at all times relevant to the complaint, he was an employee of Memorial Medical Center (MMC), a City/County Hospital; and therefore the action was barred by the two-year statute of limitations in the New Mexico Tort Claims Act. NMSA 1978, § 41–4–15 (1977). In response, Plaintiff disputed that Defendant was an employee of MMC, but asserted that even if Defendant was an employee of MMC, Defendant concealed his employee status as well as his potential negligence in prescribing the Naprosyn. Therefore, Plaintiff argued, Defendant should be equitably estopped from asserting a statute of limitations defense or, alternatively, the statutory period should be tolled under the theory of fraudulent concealment. We refer to these two claims collectively as "equitable claims."

{3}  The parties filed, and the trial judge denied, numerous motions and cross-motions for summary judgment on Defendant's statute of limitations defense and Plaintiff's equitable claims. The trial judge, however, granted Defendant's motion for an evidentiary hearing on the equitable claims and agreed to try the equitable claims before the medical negligence claim was submitted to a jury. Plaintiff agreed that the equitable claims should be bifurcated from the legal claim but objected to having the equitable claims tried first, asserting that to do so would deprive her of her right to a jury trial on the common issues of fact underlying both her medical negligence claim and equitable claims.

{4}  Before the evidentiary hearing on the equitable claims, the trial court revived Defendant's earlier summary judgment motion as to whether Defendant was a public employee. After full briefing, the court found that Defendant was a public employee at the relevant time and entered a partial summary judgment in Defendant's favor. The court subsequently held the evidentiary hearing on the equitable claims and entered findings of fact and conclusions of law. The court rejected Plaintiff's theories of equitable estoppel and fraudulent concealment and dismissed Plaintiff's medical negligence claim as barred by the two-year statute of limitations. Plaintiff appealed to the Court of Appeals, which in turn certified the above question. We affirm.

### I.  New Mexico Follows the *Beacon Theatres* Approach

{5}  In New Mexico, as under the federal constitution, there is a constitutional

right to trial by jury where the remedy sought is legal, rather than equitable. N.M. Const. art. II, § 12; *Strasser*, 99 N.M. at 789, 664 P.2d at 987. Where a case involves both legal and equitable claims, the court must decide the order in which the claims will be heard. Plaintiff claims New Mexico follows the approach of *Beacon Theatres*, which held that when a case involves legal and equitable claims and deciding the equitable claims first would infringe an individual's Seventh Amendment right to have a jury decide the factual issues underlying the legal claims, the judge's traditional discretion to hear equitable claims first is narrowly limited in light of the constitutional considerations. *Beacon Theatres*, 359 U.S. at 503–04, 508, 79 S.Ct. 948. In *Beacon Theatres*, the Supreme Court vacated a district court's order which it concluded deprived the defendant of a jury trial on the legal issues raised by its counter and cross-claims arising from the original suit, holding that "[o]nly under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Id.* at 510–11, 79 S.Ct. 948. In doing so, the Court emphasized that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Id.* at 501, 79 S.Ct. 948 (quoted authority omitted). The Supreme Court later applied this same approach to a shareholder's derivative action, holding there was a right to a jury trial on those issues to which the corporation, had it brought the action itself, would have had the right to a jury trial. *Ross v. Bernhard*, 396 U.S. 531, 532–38, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

{6} New Mexico appellate courts have recognized that a party's right to a jury trial under the state constitution could be infringed if, in a case involving both equitable and legal claims, the equitable claims are decided before the legal claims. *Scott v. Woods*, 105 N.M. 177, 183, 730 P.2d 480, 486 (Ct.App.), *cert. quashed*, 105 N.M. 26, 727 P.2d 1341 (1986); *see also Peay v. Ortega*, 101 N.M. 564, 565, 686 P.2d 254, 255 (1984) (holding that after parties stipulated to jury

trial, case could not be withdrawn from the jury simply because equitable issues were involved, implying that to do so could infringe the right to jury trial on material factual issues underlying the legal claims). We applied the *Beacon Theatres* rule for the first time in *Strasser*, 99 N.M. at 789–90, 664 P.2d at 987–88, when we determined that parties in an equitable proceeding had a right to a jury trial when their counterclaim involved legal issues. The Court of Appeals subsequently extended that principle when it adopted the reasoning of *Ross*, which stated that "where equitable and legal issues are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross*, 396 U.S. at 537–38, 90 S.Ct. 733; *Woods*, 105 N.M. at 181–83, 730 P.2d at 484–86. The Court of Appeals emphasized that in determining whether a jury trial is necessary, the appropriate focus is not the character of the overall action, but the nature of the individual issues to be tried. *Woods*, 105 N.M. at 183, 730 P.2d at 486 (applying the Seventh Amendment analysis from *Ross*, 396 U.S. at 537–38, 90 S.Ct. 733, to jury trial rights under the New Mexico Constitution). Thus, when equitable and legal claims present a common issue of fact which is material to the disposition of each claim, the legal claim must be submitted to a jury before the equitable claim is decided. *See Beacon Theatres*, 359 U.S. at 503–04, 508, 79 S.Ct. 948; *Woods*, 105 N.M. at 181–85, 730 P.2d at 484–88.

{7} However, in *McAdams*, decided just four months after *Woods*, this Court held that "when legal and equitable issues are joined in a lawsuit the trial court should first decide the equitable issues, and then if any independent legal issues remain, those issues may be tried to a jury upon appropriate request." 105 N.M. at 97, 728 P.2d at 1366. We recognize this statement in *McAdams* is inconsistent with *Strasser* and *Woods*. *McAdams* also failed to mention *Woods* and mischaracterized *Strasser* as standing for the proposition that when legal and equitable claims are joined in a proceeding, the equita-

ble claims must be heard first. *McAdams,* 105 N.M. at 97, 728 P.2d at 1366. To the extent that *McAdams* suggests a trial court must always consider equitable claims before legal claims, thereby diverging from the *Beacon Theatre* rule, we overrule *McAdams.* A party is entitled to have a jury determine any disputed fact issues that are material to disposing of both the equitable and legal claims.

{8} The case before us is illustrative. Once Plaintiff raised her two equitable claims as a means of foreclosing Defendant's statute of limitations defense, the trial court had to first determine whether either equitable claim required resolution of disputed facts that were material to the medical negligence claim. If it was possible to dispose of the equitable claims without resolving disputed issues of fact common to both claims, the court properly exercised its discretion in hearing the equitable claims, even though doing so resulted in a dismissal of Plaintiff's legal claim. As discussed below, Plaintiff's equitable estoppel claim did not raise factual issues in common with the legal claim; therefore, the trial court did not err in exercising its discretion to decide the equitable estoppel claim. While the fraudulent concealment claim did raise some factual issues in common with the legal claim, the trial court properly exercised its discretion in deciding the fraudulent concealment claim because the common fact issues were not material to whether Plaintiff knew of her cause of action or could have discovered it by exercising reasonable diligence during the statutory limitations period.

{9} As a preliminary matter, however, we must address Plaintiff's argument that in addition to infringing on her jury trial rights by hearing the equitable claims first, the trial court erred in granting summary judgment to Defendant on his claim that he was a public employee at all times relevant to Plaintiff's claim of medical negligence. If Defendant was not a public employee, and therefore not covered by the two-year statute of limitations, Plaintiff's equitable claims would, of course, be irrelevant.

## II. Defendant Was a Public Employee as a Matter of Law

{10} We review de novo the granting of summary judgment, construing rea-sonable inferences from the record in favor of the party that opposed the motion. *Celaya v. Hall,* 2004–NMSC–005, ¶ 7, 135 N.M. 115, 85 P.3d 239. Summary judgment is prope when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Hagen v. Faherty,* 2003–NMCA–060, ¶ 6, 133 N.M. 605, 66 P.3d 974. Had the trial judge determined that genuine issues of material fact existed regarding whether at all times relevant to Plaintiff's complaint, Defendant was a public employee rather than an independent contractor, this issue would properly have been sent to a jury. *See Medina v. Fuller,* 1999–NMCA–011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (whether an individual acts in the course and scope of employment duties, for purposes of determining whether a particular statute of limitations applies, is for the jury when there are disputed issues of fact). However, after further briefing on a revived summary judgment motion, the judge found as a matter of law that no genuine issues of material fact existed and that defendant was a public employee, rather than an independent contractor. We affirm.

{11} Plaintiff argues summary judgment was inappropriate because genuine issues of material fact existed regarding Defendant's employee status in February 1995, when she alleges Defendant negligently prescribed medication that resulted in her hospitalization and damages. Plaintiff first argues that Defendant had three different contracts with MMC, each of which separately defined Defendant as an employee or independent contractor, and that none of these contracts can be seen as legally controlling for determining whether Defendant was a public employee at the relevant time under NMSA 1978, Section 41–4–3(f) (2003) (defining "public employee"), and Section 41–4–15 (statute of limitations for government entities and public employees). However, by its terms the latest contract, titled "Employment and Non–Competition Agreement" (December Agreement), dated December 1, 1994, superceded any prior contracts between Defendant and MMC. This contract, which defined Defendant as an

employee of MMC, a public hospital, controlled in February 1995, the time Defendant committed the alleged negligence.

{12} How an employment contract defines the status of an individual, while relevant and material, does not answer whether an individual is a public employee or an independent contractor. We must also consider the extent to which the employer has, in the broadest sense, the right to control the individual. *See Celaya*, 2004–NMSC–005, ¶¶ 10, 13, 135 N.M. 115, 85 P.3d 239; *Houghland v. Grant*, 119 N.M. 422, 425–26, 891 P.2d 563, 566–67 (Ct.App.1995). In *Houghland*, the Court of Appeals articulated four factors relevant to determining whether an employer has the right to control an individual for purpose of establishing vicarious liability: (1) whether the employer is entitled to control the manner and means of the individual's performance; (2) the method of compensating the individual; (3) whether the employer has furnished equipment for the individual; and (4) whether the employer has the power to terminate the individual without cause. *Id.* at 425, 891 P.2d at 566. We have since broadened this test to include additional factors: (1) the type of occupation involved and whether it is generally performed without supervision; (2) the skill required for the job; (3) whether the employer furnishes the tools or instrumentalities for the job; (4) how long the individual has been employed; (5) whether the work is part of the employer's regular business; and (6) whether the employer is engaged in business activities. *Celaya*, 2004–NMSC–005, ¶¶ 14–15, 135 N.M. 115, 85 P.3d 239.

{13} Plaintiff argues she raised genuine issues of material fact regarding at least some of the *Houghland* factors that should have precluded summary judgment. The facts to which Plaintiff points, however, are either irrelevant to Defendant's employee status or otherwise insufficient to bring into question whether MMC had the manner and means to control Defendant's performance, directly compensated Defendant, furnished

his equipment or had the power to terminate Defendant at will.[1] In particular, Plaintiff claims MMC did not have the right to control Defendant as illustrated by a provision of the December Agreement that precluded MMC from interfering with Defendant's exercise of his own professional judgment in his practice. This provision, however, is neither dispositive nor particularly material to whether Defendant was an employee of MMC under the Tort Claims Act. *See Celaya*, 2004–NMSC–005, ¶¶ 11–13, 135 N.M. 115, 85 P.3d 239 (explaining that particularly in the context of professionals, the right-to-control test is more nuanced than simply inquiring whether the employer could control the details of an individual's work); *Beeck v. Tucson Gen. Hosp.*, 18 Ariz.App. 165, 500 P.2d 1153, 1157 (Ariz.Ct.App.1972) (stating that whether a hospital has the right to control the details of a physician's practice is no longer considered a relevant concern for purposes of vicarious liability).

{14} We must, then, analyze the material facts regarding Defendant's working relationship with MMC, over which there does not seem to exist much dispute between the parties. The December Agreement precluded Defendant from engaging in the practice of medicine except as an employee of MMC. It allowed MMC to fire Defendant with or without cause and comprehensively dictated the terms of his service. *Cf. Yerbich v. Heald*, 89 N.M. 67, 69, 547 P.2d 72, 74 (Ct. App.1976) (stating that where a contract does not discuss the power to fire, making the contract terminable at will, "[t]here is a factual question as to the power to discharge"). MMC required Defendant to maintain certain office hours and seek permission from MMC to change them, to maintain membership on the active medical staff of MMC and fulfill all obligations of such membership, and to perform other duties and services requested from time to time by MMC. Under the Agreement, MMC compensated Defendant with a salary, benefits, and insurance, as well as paying relevant taxes and professional dues and providing him with leave time.

---

**1.** Plaintiff argues numerous facts concerning her lack of knowledge that Defendant was a public employee. These facts are relevant to Plaintiff's equitable estoppel claim, as discussed *infra*, in Section III(A). However, Plaintiff's belief that Defendant was a private practitioner does not mean Defendant could not be a public employee.

MMC billed patients directly for all services provided by Defendant after December 1, 1994. After December 1, 1994, MMC provided all of Defendant's supplies, equipment, and staff, and leased the office space where Defendant practiced for purposes of operating its specialty Rheumatology Clinic, although this office was in the former private office of Defendant, a separate facility from MMC.

{15} In light of these facts, Plaintiff failed to establish a genuine issue of material fact regarding Defendant's employee status under the *Houghland* and *Celaya* factors. *Cf. Houghland,* 119 N.M. at 427–29, 891 P.2d at 568–70 (reversing summary judgment for defendant hospital after concluding there was a factual dispute material to whether an allegedly negligent doctor was an apparent agent of the hospital under a vicarious liability theory). The trial court properly concluded, as a matter of law, that Defendant was an employee of MMC and thus a public employee at the relevant time.

### III. The Trial Judge Correctly Ruled on the Equitable Estoppel and Fraudulent Concealment Claims Because Neither Shared Common, Dispositive Issues of Fact with the Legal Claim

{16} Once the court determined the two-year statute of limitations applied because Defendant was a public employee as a matter of law, Plaintiff invoked the equitable powers of the trial court to consider whether Defendant should be equitably estopped from asserting the statute of limitations defense, or whether Defendant's alleged fraudulent concealment tolled its application. The parties do not dispute that the doctrine of equitable estoppel, and the related concept of fraudulent concealment for tolling a statute of limitations, are equitable in nature, *see Tomlinson v. George,* 2005–NMSC–20, ¶¶ 13–14, 25, 138 N.M. 34, 116 P.3d 105; *Kern v. St. Joseph Hosp., Inc.,* 102 N.M. 452, 455, 697 P.2d 135, 138 (1985), or that there is no right to a jury trial when a party seeks equitable

relief. *Strasser,* 99 N.M. at 789, 664 P.2d at 987.

■ {17} Plaintiff argues her claims of equitable estoppel and fraudulent concealment contained factual issues that were material to Plaintiff's legal claims and that under the rule of *Beacon Theatres,* these factual issues should have been decided by a jury before the trial court decided the equitable claims.[2] Ordinarily it is within the judge's discretion whether to decide equitable claims, so long as the equitable claims do not raise factual issues that are material to Plaintiff's underlying legal claim. *See Woods,* 105 N.M. at 186, 730 P.2d at 489. While Plaintiff claims that fraudulent concealment claims should be heard by juries, we have never held that the equitable issue of whether to toll or preclude Defendant from asserting the statute of limitations is for a jury when material facts are in dispute. *Cf. Armijo v. United States Cas. Co.,* 67 N.M. 470, 472–73, 357 P.2d 57, 58–59 (1960) (holding that where the workers compensation statute provided for a jury trial right on disputed facts, disputed issue of whether good cause existed for the plaintiff's delayed filing should have gone to the jury, along with the issue of whether the plaintiff timely filed the claim within the limitations period).

■ {18} Whether the trial court abused its discretion in deciding the equitable claims before submitting the medical negligence claim to a jury initially turns on whether the equitable claims raised material issues of fact that were also material to the medical negligence claim. *See Romero v. Bank of the Southwest,* 2003–NMCA–124, ¶ 28, 135 N.M. 1, 83 P.3d 288 (reviewing for abuse of discretion the manner in which a trial court used its equitable powers). If there were common issues of disputed fact material to both claims, then the trial court should have submitted those issues to the jury before deciding the equitable claim. If there were not issues of fact material to both

---

**2.** Defendant argues that Plaintiff failed to preserve her right to have a jury decide issues of material fact relevant to her legal claims by submitting to the evidentiary hearing. However, Plaintiff properly preserved the issue by requesting a jury trial at the outset of the litigation and objecting to the court hearing the equitable issues before the jury heard the legal issues.

claims, the trial court properly exercised its discretion in deciding the equitable claims first. Under such circumstances, we review the trial court's resolution of the equitable claims to ensure that the findings, when viewed in the light most favorable to support the trial court's findings, are supported by substantial evidence and that the court applied the proper legal standard to those findings. *See Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153 (in equitable proceeding, reviewing district court's findings of fact for substantial evidence and ultimate resolution, in form of partition plan, for abuse of discretion); *Garcia v. Garcia,* 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (reviewing judge's findings for sufficient evidence and whether judge applied correct legal standard as a matter of law). We do not reweigh the evidence or substitute our judgment for that of the district court, *Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990), nor do we consider evidence that is unfavorable to the findings. *Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{19} Plaintiff initially asserts that the February 2002 hearing on the equitable claims was really a summary judgment proceeding and that the judge erred in deciding there were no genuine issues of material fact regarding her equitable claims. We disagree with Plaintiff's characterization of the hearing. The trial judge clearly decided there were genuine issues of material fact regarding the equitable claims and that summary judgment was inappropriate as a matter of law, a conclusion neither party directly disputes. The trial judge conducted the hearing as a trial on the merits of the equitable claims, heard testimony and evidence, and issued findings of fact and conclusions of law following the hearing. Both parties indicated they understood the hearing was an evidentiary proceeding at the beginning and throughout the hearing. Thus, because there were material issues of fact raised by Plaintiff's equitable claims, we must determine whether there were common issues of fact that were material to disposing of both the equitable and legal claims.

## A. The Trial Judge Properly Decided the Equitable Estoppel Claim, Which Did Not Share Any Factual Issues with Plaintiff's Medical Negligence Claim

{20} Under the doctrine of equitable estoppel, the party estopped from asserting a statute of limitations must have (1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed. The party arguing estoppel must (1) not know the real facts, and (2) change his or her position in reliance on the estopped party's representations. *Lopez v. State,* 1996–NMSC–071, ¶ 18, 122 N.M. 611, 930 P.2d 146. In this case, specifically relevant to Plaintiff's equitable estoppel claim were (1) whether Defendant intentionally concealed his status as a public employee, (2) whether Plaintiff nonetheless should have been aware of his employment status, and (3) whether Plaintiff relied on this misinformation in delaying filing her lawsuit.

{21} In deciding whether the equitable estoppel claim shared disputed factual issues with Plaintiff's legal claim, we look to the elements of the medical negligence claim. To prove her claim of medical negligence, Plaintiff had the burden of proving Defendant was negligent, that his negligence proximately caused Plaintiff's injuries, and the nature and extent of the damages. *See Alberts v. Schultz,* 1999–NMSC–015, ¶ 17, 126 N.M. 807, 975 P.2d 1279. It is clear that none of the factual issues underlying Plaintiff's equitable estoppel claim, i.e., Defendant's intent to conceal, Plaintiff's awareness or Plaintiff's reliance on Defendant's representations, were material to whether Defendant was negligent in prescribing Naprosyn or whether his negligence proximately caused Plaintiff's damages. Therefore, the trial court could properly exercise its discretion to decide the equitable estoppel claim, since by doing so the judge would not decide a fact issue underlying Plaintiff's medical negligence claim.

{22} Plaintiff next argues that the trial judge improperly engaged in weighing the evidence. While her argument seems to be based on the erroneous belief that either the February 2002 hearing was on a summary judgment motion or that the issue of equitable estoppel necessarily should have gone to a jury, Plaintiff also seems to argue that the trial court accorded insufficient weight to her evidence in reaching its findings of fact and applied an improper standard in reaching its conclusions of law. Because Plaintiff did not properly attack specific findings with particularity, the findings will be deemed conclusive. *See* Rule 12–213(A)(4) NMRA 2005.

{23} The trial court made the following factual findings relevant to Plaintiff's allegation that Defendant concealed his employee status: Beginning in February 1995, Plaintiff received co-payments indicating that Defendant was an employee of MMC, and that if she had read them, she would have known that payments were made to MMC for medical care provided by Defendant; and Plaintiff received "Explanation of Benefits" forms which would have alerted her of Defendant's status by April 1995. Based on these findings, the trial court concluded that Defendant was not equitably estopped from asserting the statute of limitations because he did not make any statements or actions that amounted to a false representation or concealment of material facts, nor did he intend or expect for Plaintiff to rely on any false impressions, and that Plaintiff did not lack the truth or means to the truth concerning Defendant's employee status. The trial court found that Plaintiff did not detrimentally rely on any act or omission of Defendant.

{24} Plaintiff offered no testimony or evidence to suggest that Defendant intentionally sought to conceal his employee status. Evidence showed that before and after April 1995, Plaintiff received (1) several Explanation of Benefits forms and billing statements from MMC for services rendered by Defendant, (2) health insurance claims for Defendant's services indicating the physician's billing name as MMC, and (3) co-payment receipts indicating that payments for Defendant's services were being made to

MMC. Although it is clear that Plaintiff originally engaged the services of Defendant while he was not affiliated with MMC, Plaintiff offered no evidence to suggest that Plaintiff relied on a belief that Defendant was a private employee when she delayed filing her lawsuit until April 1997.

{25} Based on the trial court's findings, the court could properly refuse to estop Defendant from asserting the statute of limitations based on Defendant's employee status. Courts have used equitable estoppel against the state when the state has chosen to engage in conduct that conveys an undisputable impression that it is doing business as an entity other than the state. *E.g., Lopez,* 1996–NMSC–071, ¶¶ 17–21, 122 N.M. 611, 930 P.2d 146; *Hagen,* 2003–NMCA–060, ¶¶ 12–13, 133 N.M. 605, 66 P.3d 974. In *Lopez,* where the plaintiff failed to name the state as the proper defendant within the statutory period, we held that because the state did business as the Bernalillo County Metropolitan Court, and to learn the court was a state facility, the plaintiff would have had to read the relevant statutes, the plaintiff raised a genuine issue of fact that the state should be equitably estopped from asserting its statute of limitations defense. *Id.* ¶¶ 1–3, 21.

{26} Likewise, the Court of Appeals upheld an equitable estoppel finding against the state in *Hagen,* 2003–NMCA–060, 133 N.M. 605, 66 P.3d 974. There the defendant physician, who was employed by the University of New Mexico Hospital (UNMH), was temporarily placed at a private facility pursuant to an agreement between the two entities. *Hagen,* 2003–NMCA–060, ¶ 2, 133 N.M. 605, 66 P.3d 974. The court held that the plaintiffs reasonably relied on the appearance that the defendant was a private physician in believing they had three years to file their claim, in light of the fact that the defendant did not identify himself in any way to the plaintiffs as a state employee, there were no indicators at the private facility to alert patients that state doctors were practicing there, and there was nothing in the patient's medical records to indicate that the defendant was a state employee. *Id.* ¶ 17. Noting that UNMH could have easily disclosed the defen-

dant's employee status through notices or billing, the court imputed to the state an intent to mislead potential claimants given the state's choice to do business as a private actor without indicating its public status. *Id.* ¶ 18 ("We think it perfectly reasonable that a public employee, cloaked in the identity of a person employed by a private entity, should expect persons to think he was in fact a private employee and act accordingly."); *see Lopez*, 1996–NMSC–071, ¶¶ 18–21, 122 N.M. 611, 930 P.2d 146 (noting requirement of intent or expectation for other party to rely upon misrepresentation and then suggesting that state's conduct alone could supply evidence of requisite intent).

{27} Unlike *Hagen*, in this case, there was neither an act of concealment nor evidence of intent to mislead potential claimants. Additionally, Plaintiff had a reasonable means to learn of Defendant's status as a public employee by April 1995. MMC identified itself as Defendant's employer in billing records, which Plaintiff acknowledges receiving. Further, unlike in *Lopez*, there is no evidence that MMC chose to hold Defendant out as a non-state employee, thereby concealing his employment status from potential claimants. We affirm the trial court's findings and conclusions regarding Plaintiff's equitable estoppel claim.

## B. The Trial Judge Properly Decided the Fraudulent Concealment Claim Because the Judge Could Decide the Claim Without Deciding a Fact Issue in Common with the Negligence Claim

{28} To toll the statute of limitations under the doctrine of fraudulent concealment, Plaintiff was required to prove (1) Defendant was aware of his alleged negligence and concealed it from Plaintiff, or failed to disclose medical information pertinent to Plaintiff's treatment, thereby breaching his fiduciary duty to Plaintiff; and (2) Plaintiff lacked knowledge of her cause of action and could not have discovered it by exercising reasonable diligence during the statutory period. *See Tomlinson*, 2005–

NMSC–20, ¶¶ 11, 13, 25; *Kern*, 102 N.M. at 456, 697 P.2d at 139; *Keithley v. St. Joseph Hosp., Inc.*, 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App.1984).[3] While fraudulent concealment does not require proof of a negligent act, proximate cause or damages, *see Keithley*, 102 N.M. at 569–70, 698 P.2d at 439–40, evidence of a negligent act and its proximate causation of a plaintiff's injuries, in the face of a defendant's silence or assurances to the contrary, can certainly be material to a judge's finding of fraudulent concealment. *See, e.g., id.* at 571, 698 P.2d 435, 698 P.2d at 441 (affidavits from experts stating treatment was clearly improper helped create a genuine issue of fact as to hospital's concealment of possible over-radiation).

{29} The material facts on which the parties rely assist us in determining whether the judge could decide the fraudulent concealment claim without deciding a fact issue material to Plaintiff's medical negligence claim. Defendant essentially concedes he should not have prescribed Naprosyn for Plaintiff given her history of sensitivity to medications containing an aspirin-like substance. Defendant testified that when Plaintiff was hospitalized in March 1995, he told her that Naprosyn contains aspirin or an aspirin-like substance. The parties agree that Defendant told Plaintiff had he remembered Plaintiff had a sensitivity to aspirin, he would not have prescribed the Naprosyn. The evidence also showed Defendant told Plaintiff after her hospitalization she should no longer take Naprosyn. At a minimum, this evidence suggests Defendant may have been negligent in prescribing the Naprosyn and that he conveyed this information to Plaintiff.

{30} To determine whether Plaintiff raised an issue of material fact regarding Defendant's alleged concealment, therefore, we focus on the issue of whether Defendant withheld information from Plaintiff suggesting that his potentially negligent act may have proximately caused Plaintiff's hospitalization and resulting damages. Plaintiff contends Defendant misled her when he attributed Plaintiff's hospitalization to an adverse reaction to chemotherapy rather than as a

---

**3.** Because the parties litigated this issue as one of fraudulent concealment, we do not address the issue of when a cause of action accrues under the Tort Claims Act.

result of aggravated asthma symptoms resulting from Defendant's negligent prescription of Naprosyn. Defendant argues that indeed Plaintiff's hospitalization was due not to the Naprosyn, but to the pulmonary emboli which resulted from her chemotherapy treatments.

{31} To support his position, Defendant points to evidence showing that while Plaintiff was initially admitted to the hospital for asthma and excessive wheezing, the attending physician and radiologists diagnosed her with pulmonary emboli because her reaction to testing and medications, and her worsening condition subsequent to being admitted, suggested she was suffering from pulmonary emboli rather than asthma, though her wheezing was symptomatic of both conditions. Defendant testified that the pulmonary emboli, which can mimic the symptoms of asthma, were caused by Plaintiff's cancer and subsequent chemotherapy, and claims that while he told her the Naprosyn may have contributed to her wheezing and exacerbation of her asthma, the Naprosyn could not have caused or contributed to the pulmonary emboli.

{32} This evidence could be interpreted as consistent with Defendant's claim that he alerted Plaintiff he may have acted negligently in prescribing Naprosyn, but that his negligence did not in any way cause her hospitalization and damages. Plaintiff, however, presented from her hospital medical record a consultation report by Dr. Webb, Plaintiff's attending physician, which describes the pulmonary emboli as the cause of her hospitalization, but notes that "[a]lmost surely" the asthma contributed to Plaintiff's hospitalization and the need to intubate. According to Plaintiff, this report suggested that Defendant failed to disclose medical information pertinent to Plaintiff's treatment, thereby breaching his fiduciary duty to Plaintiff.

{33} Plaintiff's argument with regard to Defendant's alleged concealment of a causal relationship between the Naprosyn and Plaintiff's hospitalization certainly could have been much stronger, both at summary judgment and at the evidentiary hearing. For instance, Plaintiff might have submitted an affidavit from an expert stating that Defendant's negligent prescription of Naprosyn proximately caused Plaintiff's hospitalization. Nonetheless, even without such evidence, in denying summary judgment the judge must have been persuaded by Dr. Webb's report that there was a material issue regarding whether Defendant fraudulently represented to Plaintiff that the Naprosyn did not cause her hospitalization, though it may have exacerbated her wheezing. The propriety of this ruling on summary judgment is not before us. Plaintiff created a fact issue regarding the first prong of the fraudulent concealment claim that was also material to the issue of proximate cause in the medical negligence claim. If a jury were to conclude that Defendant was negligent in prescribing Naprosyn, and that this negligent act proximately caused Plaintiff's hospitalization and damages, such a finding would be material to whether Defendant fraudulently concealed his negligence. *See Keithley,* 102 N.M. at 569–70, 698 P.2d at 439. By resolving the issue of proximate cause himself, the trial judge foreclosed a jury finding on the issue, thus potentially depriving Plaintiff of her right to a jury trial on a disputed issue of fact underlying her legal claim. *See Woods* 105 N.M. at 184, 730 P.2d at 487 (holding that there was a right to have the legal claims tried first where there were common issues of fact between the equitable and legal claims).

{34} However, because the test for tolling a statute of limitations due to fraudulent concealment has two prongs, both of which must be satisfied, we must determine whether evidence of a negligent act and its proximate causation of a plaintiff's injuries is also material to whether Plaintiff lacked knowledge of her cause of action and could not have discovered it with reasonable diligence during the statutory period. Although there may be times when evidence of negligence or proximate cause could be material to whether the plaintiff knew of his or her potential cause of action, in this case such evidence would not have made a difference with regard to the trial court's finding that Plaintiff was or should have been aware of her potential cause of action against Defendant.

**360**

{35} As previously noted, Defendant as much as conceded during Plaintiff's hospitalization that he should not have prescribed Naprosyn in light of the Plaintiff's history. At a minimum, this should have alerted Plaintiff to Defendant's potential negligence. The evidence also showed that sometime before April 10, 1995, Plaintiff told Defendant's staff she believed the mistaken prescription had almost killed her, and that she suspected the Naprosyn at least contributed to her condition after talking with Defendant at the hospital in March 1995. In addition, with regard to the report by Dr. Webb on which Plaintiff relied to create an issue of fact regarding Defendant's alleged concealment of what caused her hospitalization, the district court found that Plaintiff "reviewed Dr. Webb's report approximately two months after her March 1995 Memorial Medical Center hospitalization." Plaintiff does not challenge this finding on appeal. Under the facts developed here, we conclude that the factual issues material to the second prong of Plaintiff's fraudulent concealment claim were independent of those relevant to her medical negligence claim.

{36} Thus, while the first prong of Plaintiff's fraudulent concealment claim itself raised an issue of fact that was material to Plaintiff's medical negligence claim, the uncontested finding that Plaintiff nevertheless knew of her cause of action, or could have discovered it by exercising reasonable diligence during the statutory period, rendered the issue of Defendant's actual concealment immaterial to her equitable claim. In other words, the trial court could properly dispose of Plaintiff's fraudulent concealment claim regardless of any finding of actual concealment; this factual issue would not have made a difference to the court's resolution of the equitable claim. Because there were not common issues of fact material to both the fraudulent concealment and negligence claims, there was no infringement on Plaintiff's right to have the facts underlying her legal claim determined by a jury.

## IV. Conclusion

{37} We affirm the trial court's resolution of the equitable estoppel and fraudulent concealment claims. If there are disputed facts material to the disposition of both equitable and legal claims, the court's discretion to hear the equitable issues first must be narrowly exercised to preserve a jury trial on the disputed facts relevant to the legal issues. Here, we uphold the trial judge's decision to hear the equitable issues and to allow Defendant to assert the statute of limitations as an affirmative defense. Regarding Plaintiff's estoppel claim, substantial evidence supported the judge's findings and his conclusions were based on the proper legal standard. Likewise, we uphold the trial court's decision on Plaintiff's fraudulent concealment claim because there were no common issues of fact that were material to both the negligence claim and the fraudulent concealment claim. We affirm the district court.

{38} **IT IS SO ORDERED.**

BOSSON, Chief Justice, MINZNER, SERNA and MAES, Justices, concur.