1999-NMCA-158

993 P.2d 763

**Earl T. MARTIN, Plaintiff–Appellant,**

**v.**

**WEST AMERICAN INSURANCE COMPANY, a foreign corporation doing business in New Mexico, Defendant–Appellee.**

**No. 19,514.**

Court of Appeals of New Mexico.

Nov. 17, 1999.

J.E. Casados, Gail Stewart, Gallagher, Casados & Mann, P.C., Albuquerque, for Appellant.

M. Eliza Stewart, Shannon A. Parden, Madison, Harbour, Mroz & Brennan, P.A., Albuquerque, for Appellee.

## OPINION

APODACA, Judge.

{1} Plaintiff Earl T. Martin (Insured) appeals the trial court's summary judgment in favor of Defendant West American Insurance Company (Insurer). Insured sued Insurer for bad faith, breach of contract, unfair trade practices, and unfair insurance practices. The suit arose from Insurer's initial denial of defense of a personal injury action against Insured and its subsequent denial of indemnification for a settlement Insured negotiated without Insurer's participation or consent. Insured raises two issues on appeal: (1) his homeowner's insurance policy covered the personal injury action because it arose out of self-defense, and (2) the trial court erred in concluding as a matter of law that Insurer acted in good faith in denying a defense. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The homeowner's insurance policy excluded coverage for bodily injury that was "expected or intended by the insured." In July 1991, Insured had a physical confrontation with his stepdaughter in his home. The stepdaughter filed a complaint for personal injury against him in August 1993. The complaint alleged that Insured battered his stepdaughter, resulting in serious physical and emotional injuries. Additionally, the complaint stated that Insured's conduct was "egregious and oppressive, and characterized by malice or wantonness." The complaint did not allege Insured's negligence or any facts from which it could be inferred that Insured acted in self-defense.

{3} In September 1993, Insured notified Insurer of his stepdaughter's lawsuit. After receiving the complaint, Insurer contacted the stepdaughter's counsel to ascertain whether the stepdaughter was alleging negligence or unintentional conduct that might trigger a duty to defend or indemnify under the homeowner's policy. The stepdaughter's counsel informed Insurer that the suit was solely based on intentional battery. Insurer assigned a claims representative to investigate. The claims representative interviewed Insured by telephone that same month.

{4} In this interview, which was taped, Insured explained that his stepdaughter lived next door and that they had an argument concerning water use. After the argument, when Insured got out of the shower, he found his stepdaughter in his kitchen. He perceived that she was in a mood to quarrel. They yelled at each other, and Insured approached her to push her out the door. In response, she knocked his glasses off. He kept trying to push her out the door, and she kept lunging at him. The two exchanged blows and words. Insured denied that he was the aggressor. Later, there was other information provided by Insured to Insurer,

which we discuss in other parts of this opinion.

{5} Insurer initially denied Insured's claim for defense and indemnification. The letter of denial considered the stepdaughter's allegations outside the scope of Insured's coverage and advised Insured to contact Insurer if new facts emerged. Insured's counsel responded, stating that Insured did not expect to involve Insurer in the lawsuit and that he understood the basis of denial. Later, Insured filed an answer denying his stepdaughter's allegations. In his answer, he did not allege negligence or raise self-defense as an affirmative defense.

{6} By February 1995, Insured retained different counsel, who renewed his claim for policy benefits. Counsel stated to Insurer that Insured would refute the stepdaughter's complaint on the basis of intent. Consequently, Insured maintained, a judgment in negligence could result if the stepdaughter amended her pleadings. Insured's counsel also asserted that the policy would cover a negligence judgment. Insurer advised Insured to contact it with new facts or pleadings to consider. In April 1995, Insured informed Insurer that he intended to defend by asserting that he was not the aggressor and that the stepdaughter's injuries were unintentional. He provided his deposition stating that the injuries were unintentional. Based on these new arguments, Insurer agreed, with a full reservation of rights, to defend Insured beginning April 28, 1995, the date it received Insured's deposition.

{7} In May 1995, the trial on stepdaughter's complaint against Insured commenced. The stepdaughter, however, never amended her complaint to allege negligence, and her case in chief focused on battery. A mistrial resulted part way through the trial because of the trial court's acquaintance with the stepdaughter's husband. Insured asked Insurer if it would contribute to a settlement, but Insurer declined. Insured did not ask if Insurer would continue its defense in a second trial. Insured and the stepdaughter then settled. Insured settled with the stepdaughter, specifically representing that there existed no monies from Insurer to satisfy the stepdaughter's claims.

{8} After the settlement, Insured sent Insurer a bill for $17,375 .78, which represented legal expenses and costs resulting from the stepdaughter's suit from April 28, 1995, through May 30, 1995. Insurer paid the requested amount. Later, Insured demanded payment of defense costs incurred before April 28, 1995, and for indemnification of his settlement with his stepdaughter. Insurer denied that claim. That denial resulted in Insured's lawsuit against Insurer, in which he sought compensatory and punitive damages, interest, costs, and attorney fees under NMSA 1978, § 57–12–10 (1987) (regarding unfair trade practices), or NMSA 1978, § 59A–16–30 (1990) (regarding insurance practices).

{9} Both parties moved for summary judgment. Insured sought partial summary judgment on liability on the claims pled. Insurer moved for summary judgment on all issues raised by Insured. Both parties agreed to a determination as a matter of law. At the hearing, the trial court stated that issues concerning self-defense, defense of residence, and reasonable force in removing a provoking trespasser were not material to its decision.

{10} Although the trial court questioned the appropriateness of listening to Insured's taped interview, it reasoned that it should consider all the facts available to Insurer at the time it denied coverage in evaluating Insurer's good faith in making a decision concerning coverage. The trial court considered whether the taped interview raised factual issues of negligence, requiring Insurer to investigate further. The court determined that Insured was in a brawl with his stepdaughter, knew he was hitting her, was infuriated, and lost control. Consequently, the trial court concluded that Insured's statement did not raise an inference of negligence requiring Insurer to investigate further. On this basis, the trial court denied Insured's summary judgment motion and granted Insurer's motion. The trial court did not expressly rule on the question of indemnity.

## II. DISCUSSION

### A. Standard of Review

{11} We review de novo questions of law appealed from an entry of summary judg-

ment. *See Gallegos v. State Bd. of Educ.,* 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468. On questions of law, we are in as good a position as the trial court to make a determination. *See id.*

### B. Insurer's Duties to Defend

{12} Insured argues that the trial court erred in holding that his homeowner's insurance policy excluded acts of self-defense. *See, e.g., Berg v. Fall,* 138 Wis.2d 115, 405 N.W.2d 701, 704 (Wis.Ct.App.1987) (holding that insurance policy that excluded liability coverage for bodily injury "expected or intended by the insured" did not apply to privileged acts of self-defense). New Mexico case law has not decided that question. From our review of the record, it is not clear that the trial court determined the policy excluded acts of self-defense. Instead, the court determined that the issue of self-defense was not material to its decision. Additionally, our disposition does not require us to determine the issue.

In deciding whether an insurer is obligated to defend the insured, we must determine whether the injured party's complaint states facts that bring the case within the coverage of the policy. If the allegations of the complaint clearly fall outside the provisions of the policy, neither defense nor indemnity is required. *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo,* 114 N.M. 695, 697, 845 P.2d 789, 791 (1992) (citation omitted). Our analysis therefore begins with the allegations of the stepdaughter's complaint and the terms of Insured's policy. The complaint averred that Insured "battered [the stepdaughter], striking her down several times and knocking her down," and "as a consequence of [Insured's] battery upon her," the stepdaughter suffered serious physical and emotional injuries. Insured's policy expressly excluded coverage for bodily injury "expected or intended by the insured." Thus, the allegations of the complaint fall outside the coverage. *Bernalillo,* however, holds that "the allegations of the complaint [must] clearly fall outside the provisions of the policy." *Id.* Additionally, we have recently held that all facts known to the insurer or of which the insurer should reasonably be aware based on the facts and circumstances available to it or that it should reasonably investigate should be considered in determining the insurer's duty. *See G & G Serv. Inc. v. Agora Syndicate, Inc.,* 2000 NMCA 003, ¶¶ 18–29, 128 N.M. 434, 993 P.2d 751. For the reasons that follow, we hold that Insurer had no duty to defend under these requirements.

{13} During Insurer's investigation to determine whether any potential or arguable defenses fell within the scope of the insurance policy, Insured told the investigator that he and his stepdaughter "had never gotten along from day one," and that "there was a lot of hostility between them." Insured also informed the investigator that during this argument he became really mad at his stepdaughter and "just totally lost it." He also informed the investigator that at some point in the argument, "we just started hitting each other." Insured said that he was arrested for the incident and had to seek counseling due to his violent behavior against his stepdaughter. He could not say definitively whether he or his stepdaughter struck the first blow, but it is clear that both parties participated in the physical violence. We believe that the trial court could properly determine that these statements would not reasonably indicate to Insurer that Insured was claiming something other than an intentional tort.

{14} Based on these statements and the complaint filed in the stepdaughter's lawsuit, Insurer wrote to Insured, stating that it would not defend. It denied coverage on that basis. Insurer also stated, however, that if there were new facts or pleadings brought to light in the lawsuit that Insured thought might change Insurer's position, Insured should promptly bring them to Insurer's attention. Insurer's attorney responded, "[Insured] does not expect to involve [Insurer] in this lawsuit. He understands the basis for the denial of coverage." In 1995, when Insured retained his present attorneys, they wrote to Insurer, stating that there were new facts available. Insurer responded, requesting that those facts be forwarded once depo-

sitions were available. The depositions were forwarded shortly thereafter, and Insured promptly undertook to provide the defense. We thus conclude that the trial court did not err in holding that Insurer determined in good faith that no "potential" or "arguable" allegations fell within the scope of the policy during the time it was denying any duty to defend.

{15} Thus, even if we were to adopt the Wisconsin court's holding in *Berg* that the exclusion provisions did not apply to acts of self-defense, that determination would not require reversal in this appeal. We hold that the allegations of the stepdaughter's complaint and Insured's representation of his actions clearly fell outside the provisions of Insured's policy. Consequently, Insurer had no duty to defend Insured from the beginning of the stepdaughter's lawsuit until it assumed the defense in 1995.

### C. Duty to Indemnify

{16} Although Insured sought indemnification for the settlement he entered into with his stepdaughter, that aspect of the case was only briefly addressed in the trial court and on appeal. Both below and on appeal, Insurer took the position that, regardless of any potential ruling on its duty to defend before it undertook the defense, Insured could not be indemnified for the settlement because it was entered into without Insurer's consent, contrary to the terms of the insurance contract. The trial court did not rule on this issue. Because the indemnification issue was raised below and on appeal, and because there exists no dispute as to any material fact, we may reach and decide the indemnification issue.

{17} Insured's only argument below against Insurer's contention was that Insurer waived the right to rely on the policy when it was denying coverage. Insured's argument on appeal is that the trial court did not rule on the issue and that "the critical time for determination of the underlying existence of bad faith ... focuses on the insurance company's 1993 'evaluation of its duty to defend' and refusal of a defense." Because we have previously dealt with Insurer's determination in 1993 and because Insurer was in fact

defending when Insured entered into the settlement, we hold that, under the procedural posture and arguments made in this case, Insurer was not required to indemnify Insured for a settlement made without requesting its consent.

### III. CONCLUSION

{18} We hold that Insurer was not put on notice of any potential or arguable claims or defenses that would fall within the insurance policy coverage and that the trial court correctly held, as a matter of law, that Insurer acted in good faith in denying Insured's claims. For the reasons noted above, we also hold that Insurer had neither a duty to defend nor to indemnify Insured. We therefore conclude that the trial court properly granted summary judgment in favor of Insurer and affirm.

{19} **IT IS SO ORDERED.**

PICKARD, C.J., and SUTIN, J., concur.