2006-NMCA-151

148 P.3d 806

SOUTHWEST STEEL COIL, INC., a New Mexico corporation, and Calstrip Industries, Inc., a California corporation, Plaintiffs–Appellants,

v.

REDWOOD FIRE & CASUALTY INSURANCE COMPANY, a Nebraska corporation, Gary Keenan, and Keenan & Associates, a New Mexico corporation, Defendants–Appellees.

No. 25,598.

Court of Appeals of New Mexico.

Nov. 2, 2006.

Kelley, Streubel & Mortimer, LLC, Cody Kelley, Albuquerque, NM, L. Helen Bennett, P.C., L. Helen Bennett, Albuquerque, NM, for Appellants.

Kutak Rock LLP, Tory M. Bishop, Omaha, NE, Montgomery & Andrews, P.A., Andrew S. Montgomery, Victor R. Ortega, Santa Fe, NM, for Appellee Redwood Fire & Casualty Insurance Company.

Butt Thornton & Baehr PC, Emily A. Franke, Monica R. Garcia, Albuquerque, NM, for Appellees Gary Keenan and Keenan & Associates.

## OPINION

CASTILLO, Judge.

{1} Plaintiffs Southwest Steel Coil, Inc., and Calstrip Industries, Inc., (together, Southwest Steel) appeal from the district court's summary judgment order that dismisses Southwest Steel's complaint against Defendants, Redwood Fire & Casualty Insurance Company (Redwood) and Gary Keenan and Keenan & Associates (Keenan) (together, Defendants), for lack of both standing and damages. This case addresses whether potential equitable subrogation rights of an insurer preclude as a matter of law any claims that the insured has against another insurer for failure to defend and indemnify. We hold that questions of fact exist regarding whether the insured has potential damages independent of the insurer's subrogation rights and, for this reason, reverse.

## I. BACKGROUND

{2} This case arises out of an underlying suit brought against Southwest Steel by the estate of an individual who died while working at Southwest Steel's plant. At the time of the accident, Southwest Steel was insured by both Redwood (for workers' compensation and employer liability) and Fireman's Fund Insurance Company (Fireman's Fund) (for general liability and umbrella coverage). Both Redwood and Fireman's Fund initially declined to defend and indemnify Southwest Steel, resulting in Southwest Steel's suit against both insurers and Keenan, an independent adjuster engaged by Redwood to process workers' compensation claims. Southwest Steel dismissed its suit against Fireman's Fund when Fireman's Fund defended and indemnified Southwest Steel in a settlement with decedent's estate for $2,125,000.

{3} In Southwest Steel's second amended complaint against Defendants, Southwest Steel pursued its claims for declaratory judgment, breach of contract, bad faith, negligence, and violations of New Mexico's Unfair Practices Act (UPA), NMSA 1978, §§ 57–12–1 to –24 (1967, as amended through 2005), and Unfair Insurance Practices Act, NMSA 1978, §§ 59A–16–1 to –30 (1984, as amended through 2006). The parties moved for summary judgment, disputing generally whether Southwest Steel provided adequate notice to Redwood of decedent's accident and whether decedent was Southwest Steel's employee for purposes of triggering Redwood's policy obligation to defend Southwest Steel and to provide coverage. Apart from the underlying merits, Defendants argued that Southwest Steel suffered no damages because Fireman's Fund defended and indemnified Southwest Steel in decedent's settlement, that Fireman's Fund was the real party in interest, and that consequently, Southwest Steel had no standing to sue.

{4} Southwest Steel appeals the order entered by the district court granting summary judgment in favor of Defendants. Although the district court ruled that two questions of fact existed regarding the employment status of the decedent and the adequacy of the notice to Redwood, the two questions became immaterial in this case because the district court determined that Fireman's Fund, which ultimately defended and indemnified

Southwest Steel, was the real party in interest to pursue any claims based on Redwood's alleged wrongful failure to defend and indemnify. The district court based its grant of summary judgment in Defendants' favor on the conclusion that Southwest Steel lacked standing and did not suffer any damages. Accordingly, the court dismissed Southwest Steel's second amended complaint with prejudice.

## II. STANDARD OF REVIEW

{5} We review the granting of summary judgment de novo, *Celaya v. Hall*, 2004–NMSC–005, ¶ 7, 135 N.M. 115, 85 P.3d 239, construing the facts in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in support of a trial on the merits. *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879. Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Hagen v. Faherty*, 2003–NMCA–060, ¶ 6, 133 N.M. 605, 66 P.3d 974. Because summary judgment is a drastic remedy, it is used with great caution, *see Zengerle v. Commonwealth Ins. Co. of N.Y.*, 60 N.M. 379, 384, 291 P.2d 1099, 1102 (1955), and is improper if there is the slightest doubt as to the existence of material factual issues. *Las Cruces Country Club, Inc. v. City of Las Cruces*, 81 N.M. 387, 387, 467 P.2d 403, 403 (1970).

## III. DISCUSSION

{6} We address the parties' arguments in four parts. First, we discuss the real party in interest and the subrogation right of Fireman's Fund. Second, we clarify the distinction between Southwest Steel's potential damages for the causes of action in this case and damages related to the underlying case. Third, we consider Redwood's additional arguments, in regard to its duty to defend, adequate notice, and judicial estoppel. Finally, we address the parties' arguments regarding the collateral source doctrine.

## A. Real Party in Interest

{7} The district court's ruling that Fireman's Fund is the real party in interest correctly acknowledges that Fireman's Fund, as a subrogee, may be entitled to exercise equitable subrogation rights against Redwood in the event that Redwood wrongfully denied coverage. Subrogation encompasses the right of an insurance company, who has paid an insured's claim, to step into the shoes of its insured and pursue recovery from the party who is legally responsible for the insured's losses. *See White v. Sutherland*, 92 N.M. 187, 190, 585 P.2d 331, 334 (Ct.App. 1978); *Health Plus of N.M., Inc. v. Harrell*, 1998–NMCA–064, ¶ 12, 125 N.M. 189, 958 P.2d 1239 (stating that "[w]hen an insurance company pays the claim of its insured, it is considered subrogated to recovery of its money against the person who caused the injury"). A right to subrogation also exists if an insurance company pays a claim that should have been paid by another insurer. *See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 745, 799 P.2d 1113, 1117 (1990) (holding that the plaintiff insurer had a subrogation right against the defendant insurer because the plaintiff insurer was required by law and fiduciary obligations to defend); *id.* at 748, 799 P.2d at 1120 (Montgomery, J., specially concurring) (noting that the insurer's claim for subrogation did "not fit the classical model of the remedy" because the liabilities of the insurers were mutually exclusive; concluding nonetheless that extending the remedy to the insurer was consistent with the equitable principles underlying the doctrine of subrogation); *State Farm Mut. Auto. Ins. Co. v. Found. Reserve Ins. Co.*, 78 N.M. 359, 364, 431 P.2d 737, 742 (1967) (holding that the plaintiff insurer, who paid the entire loss stemming from an automobile accident, was entitled to exercise its equitable subrogation rights against the defendant insurer for reimbursement of payments made after the defendant insurer wrongfully denied coverage); *see also Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal.App.4th 1082, 97 Cal.Rptr.2d 374, 377 (2000) (holding that "[e]quitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss"). Principles of equitable subrogation between insurance companies encourage

insurers to act promptly to protect their insured's interest and to resolve disputes among themselves afterwards. *Nat'l Union Fire Ins. Co. v. Am. Motorists Ins. Co.*, 269 Ga. 768, 504 S.E.2d 673, 675 (1998).

■ {8} We conclude that Fireman's Fund, as the equitable subrogee, is the only real party in interest to pursue any claims against Redwood for monies paid by Fireman's Fund in the underlying claim. *See State Farm*, 78 N.M. at 364, 431 P.2d at 742 (holding that when a subrogee has paid an entire loss suffered by an insured, it is the only real party in interest and must sue in its own name); *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002–NMCA–080, ¶ 23, 132 N.M. 518, 51 P.3d 1172 (limiting subrogation rights to the amounts paid by the insurer); *Poteet v. Sauter*, 136 Md.App. 383, 766 A.2d 150, 160 (2001) (stating that when the subrogee has obtained complete subrogation rights, it is the sole real party in interest). Such rights, however, do not extinguish losses that Southwest Steel may have outside of the subrogated amounts.

**B.  Damages and Standing**

■ {9} At issue in this case are two separate sources of potential harm to Southwest Steel arising from the alleged wrongful denial of coverage by insurer Redwood: (1) the litigation expenses and settlement money paid in the underlying case, which Southwest Steel argues should have been paid by Redwood but instead were paid by Fireman's Fund, and (2) those damages that Southwest Steel may have suffered independent of any amount that Fireman's Fund paid in the underlying case.

■ {10} The district court's finding that Southwest Steel suffered no damages relates to the first source of potential harm, as the court's ruling is premised on its determination that Fireman's Fund "paid the expenses of litigation and the settlement proceeds" stemming from the suit by decedent's estate. As discussed earlier, Fireman's Fund may be entitled to pursue equitable subrogation rights against Redwood for monies paid out in the underlying case, in the event that Redwood wrongfully denied coverage. However, any potential right of Fireman's Fund

to reimbursement from Redwood does not preclude, as a matter of law, Southwest Steel's right to a second source of potential damages—any independent damages for the infraction of legal rights not insured and covered by Fireman's Fund's payment. *See Sanchez v. Clayton*, 117 N.M. 761, 763, 768, 877 P.2d 567, 569, 574 (1994) (holding that the plaintiffs may recover unpaid compensatory damages and also may recover punitive damages, if the plaintiffs are successful in establishing a breach of contract or tort action for either nominal or compensatory damages); *Stevens v. Mitchell*, 51 N.M. 411, 415–16, 186 P.2d 386, 389–90 (1947) (awarding nominal damages plus costs when the plaintiffs failed to establish compensatory damages arising from an admitted breach of contract, because "[a]ppellees [were] confronted with annoyances and possible loss"); *see also Shaw v. Close*, 92 Ill.App.2d 1, 235 N.E.2d 830, 831–32 (1968) (holding that "[w]here the right of subrogation exists an action may be brought in the name of the insured if the insured has an interest in the suit and is entitled to recover something, if only a nominal sum, over and above the amount of the subrogation claim"); 1 Dan B. Dobbs, *Law of Remedies* § 3.3(2), at 294 (2d ed.1993) (stating that nominal damages are awarded when the plaintiff establishes a cause of action, in contract cases and some tort cases, but cannot prove damages); Charles T. McCormick, *Handbook on the Law of Damages* § 20, at 85 (1935) ("*Nominal* damages are damages awarded in a trivial amount merely as a recognition of some breach of a duty owed by defendant to plaintiff and not as a measure of recompense for loss or detriment sustained.").

{11} In the present case, whether any nonsubrogated damages are merited depends on the facts, specifically on whether Southwest Steel can prove its claims and, if it does, on the types of damages that may flow from the various causes of action asserted by Southwest Steel. We express no opinion regarding whether coverage should have been provided or what damages Southwest Steel may be entitled to in the event that Redwood wrongfully denied coverage. Suffice it to say, without affirmatively addressing each of

Southwest Steel's claims, that some recovery by Southwest Steel may be ultimately merited if it can prove Redwood wrongfully failed to defend and indemnify Southwest Steel. *See, e.g., United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 485, 709 P.2d 649, 654 (1985) (observing that punitive damages may be assessed when there is evidence of bad faith or malice in an insurer's refusal to pay an insurance claim); *Adams v. Cox*, 54 N.M. 256, 259, 221 P.2d 555, 557 (1950) (recognizing that nominal damages may support a breach of contract claim); *Jones v. Gen. Motors Corp.*, 1998–NMCA–020, ¶ 23, 124 N.M. 606, 953 P.2d 1104 (holding that in the absence of actual losses, the plaintiff is still entitled to recover statutory damages of one hundred dollars under NMSA 1978, § 57–12–10(B) of the UPA); *Robertson v. Carmel Builders Real Estate*, 2004–NMCA–056, ¶¶ 42–46, 135 N.M. 641, 92 P.3d 653 (recognizing that in suits based on intentional torts, an award of general damages, whether actual, compensatory or nominal, is not required to recover punitive damages). Because Southwest Steel may have sustained damages separate and distinct from the settlement proceeds paid by Fireman's Fund to decedent's estate, we hold that the district court erred in ruling that Southwest Steel lacked standing as a real party in interest to pursue its independent claims. Given our holding that Southwest Steel may have suffered losses independent of Fireman's Fund equitable subrogation rights, both Southwest Steel and Fireman's Fund have a right of action for recovery of damages based on Redwood's alleged wrongful denial of coverage. *See generally* Rule 1–017 NMRA (providing that "[e]very action shall be prosecuted in the name of the real party in interest"); *L.R. Prop. Mgmt., Inc. v. Grebe*, 96 N.M. 22, 23, 627 P.2d 864, 865 (1981) (stating that the real party in interest is "one [who] is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit" (internal quotation marks and citation omitted)).

■ {12} Our holding that Southwest Steel may proceed as a real party in interest is based on the existence of questions of fact regarding whether Southwest Steel suffered damages independent of Fireman's Fund subrogation rights. This holding is not premised on Southwest Steel's assertion that it is "protecting the contribution rights of Fireman's Fund as against Redwood" as part of an assignment of rights, as Southwest Steel did not establish below that Fireman's Fund had given it such authority. Granted, the general liability and umbrella policies between Southwest Steel and Fireman's Fund provide that if the "[i]nsured has rights to recover all or part of any payment" made under the policy, "those rights are transferred to us ... [and a]t our request, the [i]nsured will bring suit or transfer those rights to us and help us enforce them." However, no evidence was introduced below to show that Fireman's Fund did in fact give Southwest Steel authority to recover any subrogation rights that Fireman's Fund may have. Although Southwest Steel's attorney asserted at the summary judgment hearing that "Fireman's Fund did provide us a letter that ... instructed [Southwest Steel] to protect [Fireman's Fund's] claims of contribution," the letter was not introduced as an exhibit, and the attorney's statement is not evidence. *See Trujillo v. Puro*, 101 N.M. 408, 411, 683 P.2d 963, 966 (Ct.App.1984) (setting forth that counsel's arguments are not evidence to create a material issue of disputed fact in a summary judgment proceeding).

## C. Other Arguments

{13} Redwood argues that even if the district court erred in its rulings, this Court nonetheless should affirm because Redwood did not wrongfully fail to defend or deny coverage to Southwest Steel. In support of its argument, Redwood contends that it had no obligation to defend or indemnify because the underlying complaint expressly alleged that the decedent was not an employee of Southwest Steel, and thus the allegations of the underlying complaint fell outside the coverage provided by the Redwood policy. Redwood also contends that Southwest Steel failed to provide notice of the decedent's underlying action to Redwood, as required for coverage under the policy. In the alternative, Redwood argues that Southwest Steel was judicially estopped from asserting cover-

age on the basis of decedent's status as a Southwest Steel employee. We are not persuaded by Redwood's arguments.

## 1. Duty to Defend

{14} The duty to defend can arise from the allegations of the complaint or from known but unpleaded facts that bring the claim arguably within the scope of coverage. *Am. Gen. Fire,* 110 N.M. at 744, 799 P.2d at 1116; *see also Servants of the Paraclete, Inc. v. Great Am. Ins. Co.,* 857 F.Supp. 822, 832 (D.N.M.1994) ("In deciding whether an insurer is obligated to defend, the [c]ourt must determine whether the injured party's complaint contains allegations or state[s] facts that bring the case within the coverage of the policy."), *amended on reconsideration in part on other grounds,* 866 F.Supp. 1560 (D.N.M.1994). If the duty to defend does not arise from the complaint on its face, the duty may arise if the insurer is notified of factual contentions or if the insurer could have discovered facts, through reasonable investigation, implicating a duty to defend. *G & G Servs., Inc. v. Agora Syndicate, Inc.,* 2000–NMCA–003, ¶¶ 25–26, 128 N.M. 434, 993 P.2d 751; *Martin v. W. Am. Ins. Co.,* 1999–NMCA–158, ¶ 12, 128 N.M. 446, 993 P.2d 763 ("[A]ll facts known to the insurer or of which the insurer should reasonably be aware based on the facts and circumstances available to it or that it should reasonably investigate should be considered in determining the insurer's duty."). Facts that are known but unpleaded may bring a claim within the policy coverage at a later stage in the litigation. *Miller v. Triad Adoption & Counseling Servs., Inc.,* 2003–NMCA–055, ¶ 9, 133 N.M. 544, 65 P.3d 1099.

{15} Southwest Steel contends that the complaint in the underlying case alleged the decedent was its employee. We disagree. The complaint states that the decedent "was an employee of Randstad Staffing Services working on the premises of [Southwest Steel] when he was killed." The complaint does not, on its face, allege that the decedent was an employee of Southwest Steel. However, facts exist from which it could be inferred that the decedent was arguably an employee for purposes of the Red-

wood policy. For example, the complaint states that the decedent was working on the premises of Southwest Steel when he was killed. Moreover, the decedent's status as an employee of another company does not negate the possibility that the decedent could be considered an employee of Southwest Steel for purposes of policy coverage. *See Johnson v. Aztec Well Servicing Co.,* 117 N.M. 697, 699, 875 P.2d 1128, 1130 (Ct.App. 1994) (recognizing that "there are situations in which a worker may have two employers, both of whom are liable for workers' compensation benefits").

{16} Moreover, our review of the record reveals sufficient evidence to support the district court's determination in this case that disputed issues of material fact exist regarding whether decedent was Southwest Steel's employee. Southwest Steel introduced its president's affidavit, wherein the president related that decedent was acting as a contract employee. The president's affidavit also set forth that the major disputed issue in the decedent's underlying suit against Southwest Steel was whether decedent was an employee of Southwest Steel. To this end, Southwest Steel provided documentary exhibits from the underlying suit, including the district court's order denying Southwest Steel's motion for summary judgment in the underlying case. The district court in the underlying case denied the motion because the court found disputed issues of fact existed regarding the willfulness of the decedent's employer. This evidence, which created a question of fact regarding the decedent's employment status, could be considered sufficient to arguably bring the decedent's claim within the policy coverage, thereby creating a duty to defend. *Cf. Servants,* 857 F.Supp. at 832 ("If the allegations of the complaint '*clearly fall*' outside the provisions of the policy, neither defense nor indemnity is required.'" (quoting *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo,* 114 N.M. 695, 697, 845 P.2d 789, 791 (1992))). Thus, we cannot say that summary judgment in favor of Defendants is proper. *Cf. Blea v. Fields,* 2005–NMSC–029, ¶ 10, 138 N.M. 348, 120 P.3d 430 (stating that "[h]ad the trial judge determined that genu-

ine issues of material fact existed regarding whether ... [d]efendant was a public employee rather than an independent contractor, this issue would properly have been sent to a jury"); *Miller*, 2003–NMCA–055, ¶¶ 9–20, 133 N.M. 544, 65 P.3d 1099 (concluding that the defendant had no duty to defend because the complaint and the known facts did not arguably bring the claim within the policy coverage).

## 2. Notice

■ {17} Moreover, the record provides substantial evidence supporting the district court's determination that a question of fact exists as to whether Redwood received notice of decedent's underlying action. Southwest Steel's president stated in his affidavit that he notified Redwood of decedent's accident, through a letter to Keenan. In addition, the president stated in his affidavit that Fireman's Fund provided Redwood with a letter giving notice of the decedent's lawsuit and Redwood's coverage obligations. A copy of each letter was attached to the affidavit. Southwest Steel also introduced portions of the president's deposition wherein the president indicated that he contacted an insurance agent affiliated with Redwood regarding the accident. The foregoing facts are sufficient evidence to support the district court's findings that a question of fact exists regarding adequate notice. *See Blea*, 2005–NMSC–029, ¶ 18, 138 N.M. 348, 120 P.3d 430, ("We do not reweigh the evidence or substitute our judgment for that of the district court, nor do we consider evidence that is unfavorable to the findings." (internal citation omitted)). Thus, summary judgment in Redwood's favor is precluded. *See, e.g., Callaway v. N.M. Dep't of Corr.*, 117 N.M. 637, 640, 875 P.2d 393, 396 (Ct.App.1994) (recognizing that generally whether or not notice has been given or received is a question of fact).

## 3. Judicial Estoppel

■ {18} Redwood also argues that Southwest Steel is judicially estopped from asserting coverage under the Redwood policy on the premise that the decedent was an employee because Southwest Steel had "accepted the benefits of the Fireman's Fund coverages for injuries to non-employees on the premise that [the decedent] was not an employee." We disagree. The doctrine of judicial estoppel "prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Rodriguez v. La Mesilla Constr. Co.*, 1997–NMCA–062, ¶ 20, 123 N.M. 489, 943 P.2d 136. The doctrine is not applicable in this case. We do not construe the circumstances in this case, an insured's acceptance of coverage from another insurer, to be equivalent to successfully assuming a certain position in judicial proceedings.

{19} First, in the underlying case, the district court denied Southwest Steel's motion for summary judgment on grounds related to workers' compensation and willfulness of the employer—issues that are directly related to decedent's employment status. The parties in the underlying case settled before the lower court resolved this issue in favor of either party. Thus, Southwest Steel was not "successful" in assuming the position that the decedent was not an employee. *See* Daniel P. Jakala, *Defense Against a Prima Facie Case* § 1:08, at 24 (1990) (stating that judicial estoppel does not lie when a settlement occurs and a judgment has not been entered in favor of the party against whom estoppel is sought to be imposed). Second, Southwest Steel has consistently maintained its position on the core issue of this case—that Redwood did not fulfill its policy obligations. *Cf. Johnson v. Yates Petroleum Corp.*, 1999–NMCA–066, ¶ 22, 127 N.M. 355, 981 P.2d 288 (concluding that judicial estoppel did not apply when the party had not previously assumed a position regarding the relevant issue before the court). We do not believe that Southwest Steel's previous position regarding the decedent's employment status is necessarily inconsistent with its position that Redwood failed to fulfill its policy obligations. *See Aztec Well*, 117 N.M. at 700–01, 875 P.2d at 1131–32 (concluding that the employee's filings regarding one employer did not preclude the possibility that he was also employed by another employer). Therefore, we hold that judicial estoppel does not prohibit Southwest Steel's claims in this case.

**728**

### D. Collateral Source Doctrine

 {20} Given our disposition of the issues, it is clear that the collateral source doctrine is inapplicable to the facts of this case. We agree with Southwest Steel that "[t]here is no danger of a double recovery presented by this case." There has been no payment, by any source, collateral or otherwise, of the independent damages that could arise out of the causes of action alleged in this case. Fireman's Fund paid litigation expenses and settlement funds for damages alleged by the estate of the decedent in the underlying case. *Cf. Sanchez,* 117 N.M. at 765, 877 P.2d at 571 ("To the extent a judgment for damages is paid by one or more of the judgment debtors, we agree that a claim for the *same damages* against any other person is extinguished regardless of the theories upon which the respective claims for relief are based."). In as far as the collateral source doctrine applies to the facts of the underlying case, the subrogation right of Fireman's Fund has extinguished any interest that Southwest Steel might have had in an action to obtain reimbursement from Redwood because Fireman's Fund settled the decedent's claim in full and obtained a complete release of liability for Southwest Steel. *See State Farm,* 78 N.M. at 364, 431 P.2d at 742 ("If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name." (internal quotation marks and citation omitted)); 2 Dobbs, *supra,* § 8.6(3), at 497 ("Courts have often suggested that protection of subrogation rights justifies the collateral source rule."); *see also* 1 Dobbs, *supra,* § 3.8(1), at 372–73 ("The general rule is that benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages."). We do not view the settlement payment made by Fireman's Fund to inure to the benefit of Southwest Steel, plaintiff in our case. Rather, the settlement payment inured to the benefit of the decedent, plaintiff in the underlying case. Thus, we conclude that the collateral source doctrine is not at issue in this case.

### IV. CONCLUSION

{21} We reverse the district court's summary judgment order that dismisses Southwest Steel's second amended complaint on the basis that questions of fact exist regarding whether Southwest Steel is entitled to damages. This case is remanded for further proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and A. JOSEPH ALARID, Judge.