This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOSE A. E. VALDEZ and VIDILIA VALDEZ,**

Plaintiffs-Appellees,

v.                                                            NO. 30,156

**ALFRED R. WALCK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MORA COUNTY**
**Eugenio S. Mathis, District Judge, and John M. Paternoster, District Judge**

Nicholas T. Leger
Las Vegas, NM

L. Helen Bennett
Albuquerque, NM

for Appellees

The Turner Law Firm, LLC
Scott E. Turner
Albuquerque, NM

Law Offices of Brian A. Thomas, P.C.
Brian A. Thomas
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Alfred Walck (Walck)[1] appeals the district court order quieting title to a disputed portion of property located in Mora County, New Mexico in favor of Jose A. E. Valdez (Valdez). The district court bifurcated the legal and equitable claims asserted in the case and held a bench trial to resolve the equitable issues to quiet title. Following that proceeding, the district court concluded that Walck was without right or title to the disputed land, and Valdez was the owner in fee simple absolute. On appeal, Walck argues that the district court erred in bifurcating the proceedings, in dismissing Walck's counterclaims, in awarding the disputed property to Valdez on the basis of his record title, and in denying Walck's claim to title by adverse possession. We affirm.

**I.     BACKGROUND**

{2}     This case arose from a dispute over the ownership over a plot of land located in Mora County, New Mexico. The contested portion of land consists of fifty-one acres located between Valdez and Walck's undisputed portions of property. By deed, Valdez owns ninety-five acres of land, sixty of which he acquired from his mother, and thirty-five of which he purchased from his sister. In each deed, the acreage

---

[1]Defendant-Appellant, Alfred Walck, died during the pendency of this case.

designation is followed by the phrase "more or less" or the Spanish translation of the phrase, "mas o menos." Walck acquired his land by maternal inheritance; however, the amount of acreage Walck actually possesses is not evident from the chain of title.

{3} The conflict over the disputed fifty-one acres has persisted since at least 1993 when Walck sought to quiet title against Valdez. That case was dismissed as a consequence of Walck's failure to prosecute. In November 2004, Valdez and his wife filed a complaint to quiet title to 146.698 acres of land against Walck and his siblings.[2] The acreage identified in the Valdez complaint constituted his ninety-five acres and the disputed fifty-one acres. Walck answered the complaint and filed several counterclaims against Valdez, seeking himself to quiet title to the fifty-one acres of land and seeking tort damages for trespass by cattle, assault, harassment, and intentional infliction of emotional duress.

{4} In March 2005 the district court entered a Rule 1-016 NMRA (1990) scheduling order. Over Walck's jury demand and objection to bifurcation, a bench trial on the merits of the quiet title claims was held on February 21, February 22, and April 13 of 2006. At the trial, each party elicited testimony from professional land surveyors regarding their respective claims of title by deed and stipulated to the competency and

---

[2]Valdez's wife, Plaintiff Vidilia Valdez, died during the pendency of this case.

expertise of each surveyor.[3] In addition to the professional land surveyor, Walck relied on an expert in title examination.

{5} Valdez's land surveyor, P. David Archuleta, testified regarding his 1992 survey of Valdez's property, in which he determined that Valdez's total acreage amounted to approximately 146.69 acres. Archuleta had previously performed surveys in the Mora County area and testified that deeds from this region can be challenging documents to rely upon because they often do not contain mete and bounds descriptions, a circumstance he discovered to exist when he attempted to discern the parameters of Valdez's deed. Archuleta also testified that acreage valuations in the Mora County area usually exhibit variations from those listed on the deed. Although Archuleta acknowledged that his survey incorporated in excess of the ninety-six deeded acres Valdez definitively possessed, he explained that it is not unusual for surveyors working in the Mora County area to encounter situations where the acreage

---

[3]We note that portions of the record, including testimony presented by Walck's experts, Edward J. Roibal and LeRoy M. Smith, are missing from the record proper, through no fault of counsel, and are unavailable for review by this court. However, because of the nature of our standard of review, that being whether the district court's judgment is supported by substantial evidence in the record, we are nonetheless able to resolve the issues presented on appeal. *See Martinez v. Martinez*, 1997-NMCA-096, ¶ 10, 123 N.M. 816, 945 P.2d 1034 (stating that it is the job of the reviewing court under the substantial evidence standard of review to determine not whether the evidence in the record could support a different result, but whether evidence in the record could support the result reached in district court).

4

resulting from a survey amounts to larger or smaller quantities than those indicated on the deeds.

{6} To describe the method he employed to survey Valdez's land, Archuleta testified that he relied on stones located around Valdez's property that both Valdez and the northern neighboring land owner indicated to be boundary markers. Archuleta stated that he had previously used similar stones in conducting his survey work. He further testified that the stones that Valdez signaled to mark the boundary lines of the property were set into the ground, appeared to be undisturbed, and were composed of a material different from those stones usually found in the area. Archuleta noted that the stone markers matched those placed upon an undisputed boundary line located on the northern border of the property.

{7} Archuleta's testimony regarding the use of stones to demarcate property boundaries was buttressed by the testimony of both Valdez's brother and Valdez's adjoining northern neighbor. Valdez's brother testified that when he was young, his father instructed him that the stones marked the boundary line of the property. He recalled that the stones had been positioned on the property before he was born and still occupied the same location. Further, Valdez's northern neighbor testified that property boundaries in the area are marked using rocks similarly relied upon by her own property surveyor. Lastly, this neighbor indicated that the fence constructed

between her property and Valdez's property followed the placement of the stones and thus marked the agreed boundary line between the two plots of land.

{8}      After trial, the district court entered a partial final judgment and decree quieting title to the disputed property in favor of Valdez. The district court ruled that Valdez was "the owner, free and clear of all liens and encumbrances, in fee simple absolute" of the 146.698 acres located in Mora County, including the fifty-one disputed acres. Concluding that Valdez's ownership interest and title were superior, the district court further found that Walck had "no estate, right, title interest, or lien in, to or upon the . . . land and real estate[.]" The district court did not rule upon either party's claim to the disputed property under a theory of adverse possession.

{9}      Following entry of judgment on September 11, 2007, Walck filed a motion to reconsider, and in a memorandum of law again reiterated his asserted ownership of the disputed acreage based on his strength of title and adverse possession. Walck repeated his objection to the district court's decision to bifurcate the legal and equitable claims. The district court denied Walck's motion, and on February 14, 2008, Walck appealed the district court's decision to this Court. We, however, dismissed Walck's appeal on the basis that his counterclaims remained pending before the district court and consequently the order from which Walck sought to appeal was not a final and appealable order.

6

**{10}** In June 2009, approximately three years after the conclusion of the bench trial on the equitable claims, Valdez filed a motion to dismiss Walck's counterclaims under Rule 1-041(E)(1) NMRA, on the basis that Walck had failed, as had been the case in his prior 1993 effort to acquire the disputed acreage, to take any significant action to bring his counterclaims to trial or to otherwise seek a final disposition. In response, Walck asserted that the bifurcated claims would be substantially affected by the scope of the land damaged by Valdez's cattle, and in the event the quiet title judgment in favor of Valdez was not upheld, Walck would be entitled to greater damages. However, the record indicates that by then his initial appeal had been dismissed for over a year, yet still Walck had taken no action to pursue or otherwise advance the pending counterclaims that constituted the basis for our dismissal of his appeal. Concluding the case, the district court granted Valdez's motion and dismissed Walck's counterclaims with prejudice in accordance with Rule 1-041(E)(1). The present appeal ensued.

## II. DISCUSSION

**{11}** On appeal, Walck contends that the district court erred in four distinct rulings: (1) bifurcating the legal and equitable claims, (2) dismissing his counterclaims pursuant to Rule 1-041(E)(1), (3) awarding the disputed property to Valdez on the

7

basis of his record title, and (4) denying his claim to title by adverse possession. We disagree and affirm each ruling of the district court on the bases articulated below.

**A.    The District Court Acted Within its Discretion to Bifurcate the Equitable and Legal Claims**

{12}    Walck maintains that the district court violated his constitutional right to a trial by jury when it bifurcated the legal and equitable issues and held a bench trial on the equitable claim to quiet title, thereby resolving factual issues common to both claims and prior to adjudication of all legal issues. We review a district court's decision to bifurcate for abuse of discretion. *See Blea v. Fields*, 2005-NMSC-029, ¶ 18, 138 N.M. 348, 120 P.3d 430; *Bolton v. Bd. of Cnty Comm'rs*, 1994-NMCA-167, ¶ 23, 119 N.M. 355, 890 P.2d 808. A district court abuses its discretion in deciding equitable claims prior to tendering the legal claims to a jury if there are issues of fact material to both the legal and equitable claims. *Blea*, 2005-NMSC-029, ¶ 18. If no issues of material fact are common to both the legal and equitable claims, a district court acts within its discretion to bifurcate the claims and preliminarily resolve those sounding in equity. *Id.* Conversely, if issues of material fact are common to both classes of claims, bifurcation is improper and would, in this instance, have constituted a violation of Walck's right to a jury trial. *Id.*

{13}    In examining whether the equitable claims to quiet title were irresolvable apart from Walck's legal counterclaims, we look to the elements of each claim to determine

8

whether any overlapping factual disputes were material to each set of claims. *See id.* ¶ 21. The equitable claims in this case were the competing actions to quiet title. Walck's legal counterclaims consisted of trespass by livestock, harassment, assault, intentional infliction of emotional duress, and violation of NMSA 1978, § 77-16-1 (1909), a statute Walck asserts required construction of a fence between the two properties.

{14}     Walck argues that the location of the boundary line between the parties' respective properties constitutes at least one foundational material issue of fact common to both the equitable claims and Walck's legal counterclaims. This shared contested fact, Walck generally asserts, precluded bifurcation as to the case as a whole. At the outset, we note that apart from pointing out that the boundary is in dispute, Walck has failed to advance any argument demonstrating how property lines are material in any way to any identified element within the asserted legal counterclaims of violation of the fencing statute, harassment, assault, or intentional infliction of emotional duress. Because this Court has no duty to review an argument that is not adequately developed, we will not ourselves attempt to discern this portion of Walck's argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at

9

what [a party's] arguments might be."). Thus, his claim of error in the bifurcation of these counterclaims fails.

{15} Because Walck has only identified how the boundary lines are material to the trespass claim alone, we conduct a *Blea* analysis as to this legal counterclaim. Walck contends that the location of the boundary line was a commonality upon which both this counterclaim and the equitable claims overlapped. Walck concedes that although he would have suffered a trespass regardless of the location of the boundary line, he maintains the placement of the boundary line would affect the amount of damages that Walck would be able to receive as a result of the claimed trespass. Although Walck is correct that the location of the boundary line may have been a common and shared fact to both the equitable and legal claims, we conclude it was not a material fact to the disposition of both. *Blea* directs that the legal and equitable claims must "share[] disputed factual issues" in order to be unsuited to bifurcation. 2005-NMSC-029, ¶ 21. The statute governing trespass on lands, NMSA 1978, § 77-14-3(A)(1999), establishes that "[i]t is unlawful for a person . . . to permit or allow the livestock to go upon the lands of others in this state for the purpose of grazing or watering upon any waters upon the lands without the permission of the owner." Walck himself alleges and concedes that, regardless of where the boundary line was drawn, Valdez's cattle were trespassing on Walck's land because the cattle were grazing on a portion of land that

10

was undisputed to be owned by Walck. Thus, with Walck's contention that the cattle were trespassing despite the location of the boundary line, it appears the determination of who held superior title, underlying the equitable action to quiet title, was not material to whether the cattle trespassed on Walck's land. To the extent that Walck argues that the location of the boundary line was relevant to the determination of damages, proof of damages is not an element to proving trespass on lands; accordingly, it is not a disputed factual issue as to the trespass to land claim. *See* § 77-14-3 (A). We conclude the district court did not abuse its discretion in bifurcating the legal and equitable issues and deciding the equitable claims to quiet title precedently to the legal claims.

{16} Walck argues that he did not waive his right to a jury trial nor did he consent to the adjudication of the equitable claim to quiet title prior to the adjudication of the legal counterclaims. However, we have concluded that the district court soundly exercised its discretion in this instance. Consequently, neither the consent nor any waiver of the party opposing bifurcation is necessary. We will therefore not further address Walck's argument in these regards.

11

**B. The District Court Did Not Err in Dismissing Walck's Counterclaims**

{17} Walck asks that we reverse the district court's ruling dismissing Walck's legal counterclaims with prejudice pursuant to Rule 1-041(E)(1) and failing to instead schedule a trial on the merits. Rule 1-041(E)(1) allows for the dismissal of an action with prejudice on the basis of the failure of the party asserting the claim to take action. The rule states:

> Any party may move to dismiss the action, or any counterclaim, cross-claim or third-party claim with prejudice if the party asserting the claim has failed to take any significant action to bring such claim to trial or other final disposition within two (2) years from the filing of such action or claim. An action or claim shall not be dismissed if the party opposing the motion is in compliance with an order entered pursuant to Rule 1-016 [] or with any written stipulation approved by the court.

The district court has discretion to determine whether to dismiss an action on the basis of inactivity. *Summit Elec. Supply Co.*, *Inc. v. Rhodes & Salmon P.C.*, 2010-NMCA-086, ¶ 6, 148 N.M. 590, 241 P.3d 188. On appeal, we review such a decision for abuse of discretion. *See id.* A district court abuses its discretion when it "exceeds the bounds of reason, all the circumstances before it being considered." *Id.* (internal quotation marks and citation omitted). There is no particular standard affixed to the satisfaction of the requirement of this rule as each case must be determined on its respective facts and circumstances. *See id.*

{18} Walck seems to argue that the period of inactivity during which he failed to proceed with his counterclaims was less than a year, a period of time our caselaw has found to be an insufficient delay to justify dismissal. *See Lowery v. Atterbury*, 1992-NMSC-001, 113 N.M. 71, 823 P.2d 313; *Cottonwood Enters. v. McAlpin*, 1989-NMSC-064, 109 N.M. 78, 781 P.2d 1156; *Vigil v. Thriftway Marketing Corp.*, 1994-NMCA-009, 117 N.M. 176, 870 P.2d 138. Although Walck's recitation of New Mexico caselaw in the area of Rule 1-041(E) dismissals is extensive, he fails to properly apply the law he cites to the facts of this case. Walck relies heavily on the factors articulated in *Jones v. Montgomery Ward & Co.*, 1985-NMSC-062, ¶ 10, 103 N.M. 45, 702 P.2d 990, which provides guidance to district courts ruling upon motions to dismiss pursuant to Rule 1-041(E). Yet he merely contends that "it is hard to colorably argue that a case tried once, appealed twice, over which five different judges presided (some briefly), four different law firms have litigated, and the parties have endured years of litigation, was not advanced within the meaning of the [r]ule." This statement, however, provides no explanation as to any specific action taken by Walck to advance his claims as required by Rule 1-041(E)(1). In fact, the record indicates that the period of inactivity was in excess of three years even following the conclusion of the bench trial on April 13, 2006 and Valdez's motion to dismiss, filed on June 16, 2009. Without more than a mere assertion by Walck that the period of

13

inactivity was less than that immediately obvious from the record, we will not address this argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

{19}     Walck further argues that he was bound by a Rule 1-016 scheduling order that prevented him from proceeding contrary to it for fear of contempt of court. But the only Rule 1-016 scheduling order cited by Walck is that pertinent to the equitable issues heard during the bench trial. Walck concedes as much in his briefing despite pointing to what we hold to be an inapplicable scheduling order. Because the scheduling order specifically established a setting for the bench trial that Walck knew was limited to the resolution of equitable issues bifurcated from his legal counterclaims, we are unpersuaded that he was unable to proceed with his legal counterclaims without contemporaneously violating the Rule 1-016 scheduling order. Practically, when the bench trial on April 13, 2006 concluded, the Rule 1-016 scheduling order related to that trial was mooted. Again, the record does not indicate, nor does Walck cite, any action he took in the ensuing years to pursue his legal counterclaims following completion of the bench trial and prior to dismissal of the counterclaims. We hold that the Rule 1-016 scheduling order, pertinent only to the

14

equitable claims to be heard at a bench trial, did not reasonably prevent Walck from acting on the bifurcated legal counterclaims.

{20}     We briefly note that Walck's final argument explaining his inactivity is that he was waiting for the outcome of his appeal to this Court regarding the district court's decision to bifurcate the equitable claims and Walck's legal counterclaims. In light of the fact that the dismissal of his appeal resulted from the ongoing nature of his legal counterclaims, we conclude that this argument lacks merit.[4]

## C.     Quiet Title

{21}     In addition to his complaints about the manner in which ownership of the disputed acreage was resolved, Walck asks us to reverse the district court's ruling on the equitable claim quieting title in favor of Valdez. Walck alleges that the district court's determination was not supported by substantial evidence and that Walck's title to the land was stronger as a matter of law. In a suit to quiet title, it is incumbent on the party asserting superior title to recover on the strength of his or her own title and not on the weakness of the title of the adversarial party. *See Cubero Land Grant v. DeSoto*, 1966-NMSC-131, ¶ 5, 76 N.M. 490, 416 P.2d 155. To this inquiry, *Blea* is again instructive. Once bifurcated, "we review the [district] court's resolution of the

---

[4]The parties dispute whether Walck's legal counterclaims survive his passing. Because we have affirmed the district court's dismissal of these counterclaims, we do not address whether these claims are justiciable.

equitable claims to ensure that the findings, when viewed in the light most favorable to support the trial court's findings, are supported by substantial evidence and that the [district] court applied the proper legal standard to those findings." *Blea*, 2005-NMSC-029, ¶ 18. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Further, in an action to quiet title, our Supreme Court has stated that an appellate court "will not disturb findings, weigh evidence, resolve conflicts or substitute its judgment as to the credibility of witnesses where evidence substantially supports findings of fact and conclusions of law of the [district] court." *Sternloff v. Hughes*, 1978-NMSC-032, ¶23, 91 N.M. 604, 577 P.2d 1250.

{22}     Although Walck acknowledges that quiet title actions are reviewed on appeal for substantial evidence, he urges us to review this issue de novo on the basis that the evidence presented was substantially documentary in nature. While it is true that "[w]here an issue to be determined rests upon the interpretation of documentary evidence, an appellate court is in as good a position as the trial court to determine the

16

facts and draw its own conclusions," *Maestas v. Martinez*, 1988-NMCA-020, ¶ 15, 107 N.M. 91, 752 P.2d 1107, the district court here held a three day trial during which it heard testimony from numerous witnesses, two of whom were stipulated to be experts in the field of land surveying. Moreover the district court relied on evidence outside the chains of title themselves, both of which were inaccurate or incomplete in some regard. When a district court relies on testimony to decide a question of fact, we review for substantial evidence. *Shearton Dev. Co. v.Town of Chilili Land Grant*, 2003-NMCA-120, ¶ 32, 134 N.M. 444, 78 P.3d 525. Here, we review the district court's decision to quiet title, which was based on both documentary evidence, as well as expert and lay testimony, under the substantial evidence standard. Although Walck argues at length that the evidence better supports the superiority of his own title to the disputed land and establishes weaknesses in Valdez's title, the issue on appeal "is not whether substantial evidence exists to support the opposite result, but rather whether such evidence [exists to] support[] the result reached." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Our determination here asks only whether there was substantial evidence to support the district court's finding that Valdez held superior title to the land. After reviewing the district court record, we conclude that the district court's findings and resolution in favor of Valdez was supported by substantial evidence.

{23}    It is clear on examination of the record that the deeds Valdez presented to the district court are not dispositive on the issue of whether he held title to the disputed portion of land. Valdez sought to quiet title to approximately 146 acres, and his deeds solely grant him title of approximately ninety-five acres. Similarly, it is unclear from the record whether the disputed portion of property is encompassed within the land Walck inherited from his mother. Thus, during the bench trial on the merits, each party presented witnesses, including two expert land surveyors, in an attempt to establish their respective claims of title by deed and title by adverse possession. Based on the district court's decision, it is plain that the district court relied on and accepted Archuleta's testimony in reaching his ruling. To the extent Walck argues that Archuleta's survey was unreliable and should have been rejected by the district court, we have repeatedly recognized that a trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses and we will not disturb that court's conclusions unless they are unsupported by substantial evidence. *See State v. Vandenburg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo*, 1990-NMSC-114, ¶ 7. Archuleta testified to how he conducted his survey and the reasons he utilized stone markers in determining boundary lines. He offered reasonable explanations for the variation between the

18

acreage indicated in Valdez's deeds and the acreage represented in the survey results. On the record herein, we can conclude that the district court's determination that Valdez's title was stronger was supported by substantial evidence. *See Pucci Distrib. Co.v . Nellos*, 1990-NMSC-074, ¶ 9, 110 N.M. 374, 796 P.2d 595. Accordingly, we conclude that the district court did not err on this basis.

**D.     Adverse Possession**

{24}     In the alternative to acquiring title to the disputed property by a showing of superior title, Walck asserts that he acquired title to the land by adverse possession, and the district court erred in denying his claim. We note at the outset that both parties agree that despite evidence of the competing claims of adverse possession being prosecuted during the bench trial, the district court did not issue any express ruling as to either theory of adverse possession. Instead, the district court awarded the disputed property to Valdez on the basis of his superiority of title. We review a claim for adverse possession for substantial evidence. *See Quarles v. Arcega*, 1992-NMCA-099, ¶ 47, 114 N.M. 502, 841 P.2d 550. In order to acquire property under the theory of adverse possession, a party must have a good faith color of title and use the land continuously for a period of ten years. *See* NMSA 1978, § 37-1-22 (1973). Further, the claim of right to the property must be actual, visible, exclusive, hostile, and continuous. *Merrifield v. Buckner*, 1937-NMSC-045, ¶ 12, 41 N.M. 442, 70 P.2d 896.

19

Our caselaw indicates that "such possession or element cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture." *Id.* ¶ 13 (internal quotation marks and citation omitted). Additionally, the party claiming adverse possession to the disputed property is required under New Mexico law to pay the assessed property taxes for the ten-year statutory period. *See* § 37-1-22. Even if the party asserting adverse possession proves all of the pertinent elements of the claim, the failure to pay taxes on the property for the requisite period is fatal to the claim. *See Platt v. Martinez*, 1977-NMSC-026, ¶ 4, 90 N.M. 323, 563 P.2d 586.

**{25}** "A party claiming ownership of land by adverse possession must prove by *clear and convincing evidence* continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years." *Williams v. Howell*, 1989-NMSC-009, ¶ 10, 108 N.M. 225, 770 P.2d 870 (emphasis added). Thus, the standard of proof by the party asserting claim by adverse possession is higher than a mere preponderance of the evidence. A clear and convincing evidence standard requires that the evidence "must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 15, 139 N.M. 137, 130 P.3d 198 (internal quotation marks and citation omitted).

{26}     In the present case, substantial evidence supports the district court's conclusion that Walck did not prove by clear and convincing evidence that he adversely possessed the disputed property. First, it is not clear in the evidence presented to the district court that Walck paid the taxes on the disputed property for the requisite time period. The exhibit to which Walck cites, asserting that he did indeed pay the taxes, does not provide any indication that Walck paid the taxes on the disputed property from 1994 to 2004. Conversely, evidence was provided to the district court indicating that Valdez paid the taxes on the disputed property in 1995 when the assessor's office combined the two parcels. Further, Walck asserts as much in his brief in chief, stating "It was not until February 9, 1995, that the two parcels were combined in the assessor's office and the acreage increased to 146.69 acres." This is both the amount Valdez acquired in the bench trial resolving the equitable claims, and for which Valdez paid in taxes in 1995. These tax records provide substantial evidence that Walck was not in fact paying the taxes on the disputed property for the entire ten- year period preceding the filing of the action as is required to succeed on the claim of adverse possession. Accordingly, Walck failed to present clear and convincing evidence in the district court that he adversely possessed the disputed property. *See In re Estate of Duran*, 2003-NMSC-008, ¶ 8, 133 N.M. 553, 66 P.3d 326 (stating that "a party claiming ownership of land by adverse possession must prove by clear and

21

convincing evidence continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years.") (alteration, internal quotation marks, and citation omitted).

**III.    CONCLUSION**

{27}    For the foregoing reasons, we do not disturb the judgment of the district court. Accordingly, we affirm.

{28}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**